### JERRY STOKES *v.* THE STATE.

1. CRIMINAL LAW. *Evidence. Footprints.* Where the State brought a pan of
mud into the court and placed it immediately in front of the jury,.
and proved by a witness that the mud was about as soft as the mud
in the branch where he saw the track, and the prisoner was then
called on by the Attorner General to put his foot in the mud; held,
the bringing in of the pan of mud and the request of the Attorney
General were improper, and should not have been permitted by the
court.

2. SAME. *Same. Withdrawing illegal testimony.* The practice of permit-
ting incompetent and illegal testimony to be placed before the jury,
and afterwards, at the close of the case, withdrawing it and telling
the jury not to be influenced thereby is deprecated. Such testimony
should be promptly rejected, and not permitted to go to the jury at all.

#### FROM DAVIDSON.

Appeal from the Criminal Court. THOS. N. FRA-
ZIER, J.

ATTORNEY GENERAL HEISKELL for State.

P. G. STIVER PERKINS,
O. S. GALBREATH,   } for Stokes.
W. D. COVINGTON,

LEA, Sp. J., delivered the opinion of the court.

The prisoner was indicted for the murder of Mrs.
Housen in the Criminal Court of Davidson. He was
tried, convicted of murder in the second degree, and
sentenced to twenty years in the penitentiary.

Mrs. Housen was taken from her house at night
and carried some distance and hung to what the wit-
nesses term a "hog pole." Near the place where

·she was hung a track was found in the mud, in a branch, made by a barefoot. The inference from all the surrounding circumstances is, that the person who made that track was one of the parties who were en- ·gaged in the murder. And, upon an examination of the record, we are satisfied that the jury in part 'based their conviction upon their belief that the track found in the mud in the branch near where Mrs. Housen was hung was made by the foot of the prisoner. The question then is, whether the track was made by the prisoner was of very great importance in the investigation.

Upon the trial of this cause, the bill of exceptions ·shows that "the State brought in a pan of mud and placed it immediately in front of the jury, and then :asked the witness if the mud in the pan was about as soft as the mud in the branch where he saw the ·track. Witness said it was. (To all of which defendant objected and the same was overruled.) The Attorney General then called upon the defendant to ·put his foot in the mud." Upon objection, the court ·told the defendant he could put his foot in the mud if he wanted to, but he would not force him to ·do so.

Subsequently another witness was asked "if he saw the pan of mud setting there before the jury. He ·said he did, and he was asked if he saw any track in it. He said he saw none. (To all which defend- ·ant objected.) Here the Attorney General again ·called upon the defendant to put his foot in the mud."

Because of this action of the Attorney General, and

the assent of court thereto, this cause is reversed and' remanded. In the presence of the jury the prisoner is asked to make evidence against himself. The court should not have permitted the pan of mud to have been brought before the jury, and the defendant asked to put his foot in it. We are satisfied the jury was improperly influenced thereby. And it is no sufficient answer that the judge afterwards told the jury that the refusal to put his foot in the mud was not to be taken as evidence against him. The bringing in of the pan of mud and the request of the Attorney General was improper and should not have been permitted by the court. We greatly deprecate the practice into which some Circuit Judges have fallen, in permitting incompetent and illegal testimony to be placed before the jury, and afterwards, at the close of the case, withdrawing it and telling the jury not to be influenced thereby. Such testimony should be promptly rejected, and not permitted to go to the jury at all, for jurors with minds untrained to legal investigations and discriminations are sometimes likely to be influenced thereby, although such imcompetent evidence may be afterwards withdrawn. And while we will not reverse because of the admission of incompetent evidence afterwards withdrawn, unless we are satisfied the jury was in fact influenced thereby, yet the correct practice is to reject such evidence at once, and not permit it to go to the jury.

In this case, as before stated, we are satisfied that the action of the Attorney General in bringing the pan of mud into court and requesting the defendant to put.

his foot in it had an influence upon the jury preju-dicial to the prisoner. Although we might be satis-fied of the prisoner's guilt, yet it is our duty to see that he has a fair and impartial trial, and this he must have though costs may accumulate and punish-ment be long delayed.