## STATE *v.* FOUTCH.

*(Nashville.*      February 20, 1896.)

1. SELF-DEFENSE.   *Justifiable shooting.*

It is self-defense for one to shoot, at his own house, with a pistol
obtained for defensive purposes, a drunken blackguard, ad-
vancing upon him with a drawn open knife, who had intruded,
an unbidden guest, on the occasion of a social party, and was
indulging, in the presence of ladies and others, in oaths and
obscenity, and refusing to desist or leave the premises after
repeated remonstrance and invitations.

Case cited and approved; 95 Ky., 626.

2. DEFENSE.   *Of home and family.*

The citizen has the right to protect his own home and family
and to preserve peace, order, and the observance of decent be-
havior in his own house and in the presence of his family. He
has the right to eject drunken, disorderly, and dangerous per-
sons from his house, and to use all force that may be required
for that purpose. If resisted and exposed to danger by the
intruder, he may exercise his right of self-defense, and is un-
der no obligation to retreat or escape from his own premises
to avoid trouble. He will not be denied the plea of self-de-
fense by reason of his having obtained and used a deadly
weapon on the occasion, if he did it only for the purpose of
defending himself and family.

Cases cited and approved: Fitzgerald *v.* State, 1 Leg. Rep., 53;
Foutch *v.* State, 95 Tenn., 711.

---

FROM   DEKALB.

---

Appeal  in  error  from  Circuit  Court  of  DeKalb
County.   J. S. GRIBBLE, J.

Attorney-general PICKLE for State.

DAN WILLIAMS and W. V. WHITSON for Foutch.

WILKES, J. The defendant is convicted of an assault with intent to murder and sentenced to one year in the State penitentiary, and has appealed. The case is one of the most remarkable that has come under the observation of this Court. The charge of the trial Judge has a number of errors, but it is not necessary, in the view we have taken of the case, to pass upon them specially.

It appears that the defendant is a young man of excellent character, and against whom nothing appears in this record that is at all derogatory to his good morals and good citizenship. He is a married man with a wife and children. He had given an entertainment to his friends and neighbors, and many young people of the community had gathered at his home to enjoy the occasion in a quiet, decorous, and peaceable manner. The prosecutor was not expected at this gathering, but, it appears, put in his attendance as an unbidden guest. Soon after his arrival the defendant found him, and welcomed him to the entertainment in a cordial, frank, and open manner. The prosecutor soon afterwards found a fit companion in a young man who had some whisky, and these two went out of doors and behind the house, and proceeded to partake of this whisky. Both soon became boisterous and disorderly, and especially the prosecutor, who indulged in loud, rude, and ob-

scene language in the presence of the ladies and of defendant and his family. His oaths and obscenity are too gross and vulgar for repetition. It appears that, among the mild manifestations of his reveling humor, he commanded the defendant to play the fiddle, and, when he did not comply, because of the prosecutor's indecent behavior, he cursed him and commanded him to play. He danced with his drunken companion and by himself over the floors when everyone else had been driven away by his conduct and when no dance was in progress. Defendant remonstrated with him, kindly and gently at first, and afterwards with more firmness and spirit, but still in a respectful manner. His conduct grew worse, and an officer, who happened to be present, took him aside and told him he would be compelled to arrest him if he did not behave. In the meantime the entertainment was virtually broken up by the boisterous, indecent conduct of the prosecutor, the plays stopped, and the young ladies present asked their escorts to take them home. In the meantime the prosecutor had taken out his knife and held it in his hand, partially concealed under his coat tail, and continued his curses and indecent conduct and obscene language and threatened to engage in a difficulty with a third party. In this state of affairs the defendant took his pistol from the mantel, as he states, and as is clearly evident from the record, for the purpose of protecting himself and his family and guests from danger from the drunken reveler.

It is not shown that he concealed it, nor do we deem this important. The officer had succeeded in getting the prosecutor out of the house under a shed, and, after remonstrating with him, he promised, at length, that he would get his coat and leave the house of defendant, whom he denounced in the most vulgar and offensive language. The defendant, who was at one end of the porch or shed, where he had gone to preserve order, so far as he could, heard the abusive language, and retorted by saying to the prosecutor that he had, up to that time, treated him like a gentleman, but that he had then to leave his house, using, for the first time, rough and abusive language. Thereupon the prosecutor made an advance upon the defendant with his open knife and hand raised, and had gotten within a few feet of the defendant, who, in the meantime, had stepped back and was being warned by cries to look out, as the prosecutor had his knife open, whereupon the defendant shot the prosecutor in the face, the ball ranging backward and lodging in the neck. He recovered from the wound and is still alive, with the ball presumably still in the back of his neck.

It is almost incredible that the defendant could, by any jury, be found guilty of any offense under this statement of the case, and there is no other theory that has the least semblance of truth or consistency. Defendant was a quiet citizen, not drunk or drinking, in his own house, and in the presence of his own family and friends, attempting, in a

mild and peaceable manner, to protect his own home from this unwarranted invasion by a reckless and riotous reveler, who was outraging all propriety and decency, indulging in oaths and obscenity, and with a dangerous weapon open in his hand, defying the defendant as well as the officers of the law, and threatening a difficulty not only with defendant but with others, and, when required to leave, advancing upon the defendant with open knife and uplifted hand, and pressing him back by his menaces until he could retreat no farther, and then defendant, in his own self-defense, and in defense of his own family and fireside, shot him, as he had a right and as it was his duty to do. It is remarkable that the prosecutor, after making such a record for himself, should have the effrontery to come into Court and ask that the defendant, whom he had so outraged in his own home, should be sent to the penitentiary for defending himself from his ruffianly attacks. From the record, as it appears in this case, the State has more need for the services of this defendant to protect his own home and family from this shameless and lawless intruder than it has for his services in the penitentiary, and the peace, good order, and quiet of society will be better subserved by leaving the defendant to protect the integrity of his own home.

As is appropriately said in *Eversole* v. *Commonwealth*, 95 Ky. Rep., 626: "The verdict shows the jury were either lacking in intelligence or con-

trolled by passion or prejudice, and it is somewhat surprising that the Circuit Judge would let such a verdict stand. Notwithstanding the deceased had acted like a brute and bully, and accused had twice left his own house to avoid a collision, and he shot only when assaulted in his own yard and on his way into his own house, the jury consigned him to the penitentiary.''

Under our constitution every citizen of the State has the right to keep and bear arms for his proper defense, and the Legislature only has power by law to regulate the wearing of arms to prevent crime. Article I., Section 26; 3 Heis., 178.

He has a right also to protect his own house and family, and to preserve peace and good order in his own house, and he has the right to eject therefrom those who are drunken, disorderly, and dangerous, and to use such force as is necessary for that purpose. If while engaged in this duty he is beset or menaced, he is entitled not only to the right of self-defense, but to use such force as may be necessary to protect himself and family and eject the intruder. He is not required to retreat or escape from his own premises, but may stand his ground, and is not required to give back before he can plead self-defense. Nor will he be precluded from such plea by the fact that he used a deadly weapon, if he did it for the purpose of defending himself and family. *Fitzgerald* v. *The State*, 1 Leg. Rep., 53; *Foutch* v. *The State*, 11 Pickle, 711.

There is absolutely no ground upon which the defendant can be convicted of any crime in this case, and the judgment is reversed and the cause remanded, with the suggestion that the public welfare and peace and dignity of the State does not require any further prosecution.