46 N.J. Super. 1 (1957)
133 A.2d 688
COLLEEN CLARK KAHALILI, PLAINTIFF-RESPONDENT,
v.
ROSECLIFF REALTY, INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 3, 1957.
Decided July 1, 1957.
*3 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Walter G. Winne argued the cause for defendant-appellant (Messrs. Winne & Banta, attorneys).
Mr. Sigmund Auerbach argued the cause for plaintiff-respondent.
The opinion of the court was delivered by CONFORD, J.A.D.
Plaintiff fell out of a roller coaster operated by the defendant at Palisades Amusement Park, April 23, 1954, sustaining severe bodily injuries. This is an appeal by the defendant from a judgment entered upon a jury verdict in plaintiff's favor. At a previous trial a verdict for the plaintiff had been set aside by the trial judge as against the weight of the evidence. The instant verdict withstood a motion for a new trial.
On the date mentioned the plaintiff, a young woman, in company of a male friend, arrived at the amusement park at about 4:00 P.M. After consuming a whisky highball at an open air bar and taking a ride on a ferris wheel, she and her friend went directly to the roller coaster. This device consists of a train of three cars, coupled together, and running *4 on tracks, which is first pulled by electric power to an elevation and then permitted by gravity to plunge down and around a series of dips and curves of varying degrees. It is common knowledge that a roller coaster is one of the more thrilling types of "rides" found in amusement parks and that its attraction lies in the exhilaration produced by the speed and suddenness of its movements.
On this particular device each car has three seats. These are three feet wide. A stationary "safety bar" of tubular stainless steel is bolted to the back of each seat, extending over the well of the seat behind, so that it crosses laterally over the hips of the occupant, and about one foot away from the abdomen of the average occupant. The passenger is not strapped in.
The coaster track is 2,600 feet in length, the curves banked to counteract centrifugal force. This apparatus, including the train, has been used continuously by defendant each season since 1944. There was no claim by the plaintiff of faulty construction of the device and there was expert proof on behalf of the defendant that it was "the safest type of construction * * * that is in operation today."
Plaintiff and her companion took one ride together. He was unwilling to take another, but she wanted to, so she stayed on the train, but changed her seat, so she testified, to another three or four seats toward the rear. Her account of the second ride was as follows. On the initial ascent she did not take hold of the bar, the rise being slow, but as the first plunge began she took hold of the bar, found it was loose ("it jiggled back and forth") and let go of the bar because she "didn't feel it would sustain [her] weight, and [she] was afraid of falling out." She then held onto both sides of the car, but she was "being pushed back and forth in the car" and "was growing quite tired." She then testified:
"Without leaving go of my grip, I turned around in my seat, but holding on, and held onto the back of my seat, and there were some young ladies riding in a car in back of me, and I tried to call to them to let them know of the difficulty that I was in, and they *5 made some gestures, but I couldn't hear what they were saying; and then suddenly I felt a different lurch, rather strong, and I went out of the car; and that's all I remember."
She further explained the "lurch" as: "It was a different lurch and a sudden lurch. It was a different lurch than the turns or the curves that you go around." She testified, with corroboration from defendant's witnesses, that at no time did she stand up in the car. On cross-examination she admitted that at the first trial she had testified that "I just felt a lurch and I went out."
Plaintiff had no supporting witnesses. Her companion on the day of the ride did not appear in her behalf. The trial court denied a motion for an involuntary dismissal at the end of the plaintiff's case.
Defendant produced as witnesses three teen-age girls who were the only other occupants of the coaster on the ride when plaintiff was injured. They were riding free, one of them being the daughter of a park employee. Their testimony was in substantial agreement, except that two of them said plaintiff went "over the bar" and out of the car, and the third that she "went out head first underneath the bar." The substance of the remainder of their testimony was that plaintiff did not change her seat between rides; that they warned her to hold onto the safety bar and she replied, "Maybe with one hand"; that as the ride began she shouted to her companion, "Wish me luck"; that there was nothing unusual or different about the ride, nor any sudden or unusual lurch; and that plaintiff was not holding the bar but was swaying from side to side in her seat before she fell out. They also testified that they tested the bar in the plaintiff's seat after the accident and found it was not loose. Each of the girls was an experienced roller coaster patron. How much experience on other roller coasters plaintiff previously had is unknown, but this was her first experience on defendant's coaster.
Defendant also offered proofs by its staff personnel to the effect that the cars, tracks and safety bars were inspected daily; that the safety bar of the car in question was found to *6 be firm immediately after plaintiff was injured; and that the same car has been used continuously since. Other details of their proof are recounted infra. Joseph A. McKee, associated with the management of the park, and purporting to be an expert in the construction and operation of roller coasters, testified that the purpose of the safety bar was to compel passengers to remain seated. "If the people remain in the seat, they will come home" (arrive safely).
The court denied a motion for dismissal at the end of the defendant's case, relying principally upon the applicability of the rule of res ipsa loquitur.
The grounds of appeal fall in three categories: (a) failure to dismiss for lack of evidence of specific negligence proximately causing the injury; (b) erroneous charge to the jury of the applicability of res ipsa loquitur and reliance upon that rule in denying the motion for dismissal; and (c) miscellaneous other errors in the charge of the court.

I.
While defendant was not an insurer of its patrons' safety, Schellack v. Biers, 109 N.J.L. 61, 63 (E. & A. 1932), it was incumbent upon it to exercise reasonable care and diligence to keep and maintain the device reasonably safe for its intended purpose. Ibid.; Friel v. Wildwood Ocean Pier Corp., 129 N.J.L. 376 (E. & A. 1943); accord: Griffin v. De Geeter, 132 N.J.L. 381, 382 (E. & A. 1945); Pona v. Boulevard Arena, 35 N.J. Super. 148 (App. Div. 1955). Patently reasonable care in this instance included affirmative efforts to inspect the device to see that it was operating with reasonable safety. 2 Restatement, Torts, § 300, comment (c). (1934); Rakowski v. Raybestos-Manhattan, Inc., 5 N.J. Super. 203, 207 (App. Div. 1949), certification denied 3 N.J. 502 (1950); 52 Am. Jur. 293, Theatres, § 48 (1944); Firszt v. Capitol Park Realty Co., 98 Conn. 627, 120 A. 300, 29 A.L.R. 17 (Sup. Ct. Err. 1923); Carlin v. Smith, 148 Md. 524, 130 A. 340, 344, 44 A.L.R. 193 (Ct. App. 1925). If a defect is discoverable *7 by proper and due inspection it is immaterial that defendant has no actual knowledge of it. Compare Oelschlaeger v. Hahne & Co., 2 N.J. 490 (1949), with Van Staveren v. F.W. Woolworth Co., 29 N.J. Super. 197, 203 (App. Div. 1954). Defendant itself offered evidence of its daily inspection of the entire area of the tracks and of inspection before operation each day of the particular device here used. More significantly, defendant's brakeman Caporale (operator of the coaster) testified to his practice of "inspecting" the safety bars after every ride. He said that while the cars were "moving down" from discharge point to loading platform, he would "help it down" by pulling on the bar, at the same time "finding out if it was loose," and that he "distinctly" remembered performing this operation just before plaintiff's fateful ride; moreover, that he found the bar "bolted fast" upon inspection immediately after the accident. In view of plaintiff's testimony that the bar was in fact loose and that it "jiggled," there consequently arose a question of credibility and the jury could have chosen to believe plaintiff. It being highly doubtful that the bar could have been "fast" when Caporale "inspected" it and loose when plaintiff first discovered the looseness, the jury could have inferred that Caporale, in performing his inspection, did not exercise the requisite amount of care. The duty to inspect includes, by its very nature, the duty to inspect properly. "An inspection must be adequate, according to the circumstances, to be reasonably careful." Carlin v. Smith, supra (130 A. at page 344). A failure to inspect properly is at least as culpable as a failure to inspect at all. Cf. M. Dietz & Sons, Inc., v. Miller, 43 N.J. Super. 334, 338 (App. Div. 1957). We conclude that the jury could have found that the bar was loose, that the condition was discoverable by a reasonably adequate inspection, and that an inspection was made but was not adequate.
Defendant apparently contends that the looseness of the bar could not have proximately caused the injury, relying chiefly upon the testimony of McKee, implying that the bar is placed in the car only to prevent people from standing up, *8 and that since the plaintiff did not stand up, the looseness of the bar could not have contributed to the accident. However, we find it hard to believe that if plaintiff had maintained a firm grip on the safety bar, her susceptibility to the lurches and turns of the roller coaster and to the hazard of a fall from the car would not have been significantly diminished. The bar is usually called a safety bar, and common sense dictates that holding it is an aid to safety. This is corroborated by the admonitions of the three experienced girl riders to the plaintiff to hold the bar. The jury was specifically instructed that it would have to find that the looseness of the bar proximately caused the injury. The jury did not have to accept McKee's testimony literally. It was free to draw the inference that if plaintiff had held onto the bar she would not have been injured.
Defendant also contends that plaintiff's failure to hold onto the bar was contributory negligence as a matter of law and was a contingency not foreseeable by the defendant. While defendant's witnesses testified, in effect, that plaintiff's failure to hold onto the bar was purposeful, this is emphatically denied by plaintiff. We cannot say that, as a matter of law, plaintiff acted unreasonably or unforeseeably, under the circumstances, when she elected, according to her testimony, to rely on holding onto the sides and back of the car rather than the "jiggling" bar, which she feared would not hold her weight.
We conclude, therefore, that the jury could have found that the looseness of the bar, if a fact, proximately contributed to the causation of plaintiff's injury.

II.
Had the looseness of the bar been the only theory upon which the jury was permitted to find liability, a jury verdict for the plaintiff would be supportable. However, the trial court submitted another theory of liability to the jury under the doctrine of res ipsa loquitur. This we are constrained to hold was error.
*9 Under the classic statement of the requirements of the rule of res ipsa loquitur, in addition to the element of control by the defendant of the instrumentality, it must appear that the injurious occurrence is one "which in the ordinary course of things would not take place if the person in control were exercising due care." Mumma v. Easton and Amboy R.R. Co., 73 N.J.L. 653, 658 (E. & A. 1906).
We do not find in the evidence any justification for the trial court's conclusion that there was that kind of occurrence insofar as the roller coaster itself, as distinguished from the plaintiff, over whom defendant had no control, was concerned. (Of course, the "loose" bar plays no part in this analysis.) The theory of the trial court was that McKee's testimony that the cars are constructed in such a manner that as long as the passengers remain seated they must complete the ride safely ("come home"), coupled with plaintiff's testimony as to a "sudden," "different," and "stronger" lurch, and the admitted fact that she did not stand up, gave rise to the hypothesis of an unusual occurrence within the rule of res ipsa. We do not agree.
We have recently had occasion to stress that res ipsa cannot apply unless the trial court itself properly finds that the balance of probabilities from the proofs is that, in the ordinary course of things, that is, in general experience, the occurrence would not have happened if the defendant, in control of the instrumentality, had been exercising due care. Bornstein v. Metropolitan Bottling Co., 45 N.J. Super. 365 (App. Div. 1957). While many decisions in other courts have utilized res ipsa in cases involving roller coasters and other "thrill" rides, Annotations, 98 A.L.R. 557, 561 (1935); 61 A.L.R. 1289, 1293 (1929), we have been unable to discover any New Jersey decision in that category wherein the doctrine was successfully invoked without specific proof of an aberration of some kind in the physical behavior of the device. The only such opinion cited to us wherein the doctrine appears to have been urged is Adriance v. Schenck Bros., 95 N.J.L. 185 (E. & A. 1920). There plaintiff was injured while riding in an amusement device called a "racer." *10 There was no proof as to how the plaintiff was injured or in what way the machine went awry and caused the injury. There was only the bare fact that the plaintiff was "doubled up, bleeding." The court held res ipsa inapplicable, affirming a non-suit. Thus the mere fact that the injury occurred on an amusement device was held to be insufficient to warrant application of the doctrine.
"It is not the doing of an injury to person or property that evokes the application of the maxim res ipsa loquitur. It is the unusualness and unexplained elements of the happening, within the knowledge and control of the defendant, from which the injury results." (Emphasis added) McKinney v. Public Service Interstate Transp. Co., 4 N.J. 229, 242 (1950).
Thus, in the present case, the fall is not the "unusual occurrence"; the fall is but the injury. Plaintiff must show an unusual occurrence with relation to the car, not merely with respect to the plaintiff. It has already been noted that plaintiff does not contend that the coaster was not properly constructed. Compare Garafola v. Rosecliff Realty Co., Inc., 24 N.J. Super. 28 (App. Div. 1952). While the percentage of roller coaster passengers who do not "come home" via the appointed route is admittedly small, it cannot be said that, absent satisfactory proof of at least an "unusual" occurrence in the manner in which the device proceeded or functioned, the event precipitating this action, plaintiff's fall, was one which "in the ordinary course of things" would not take place if the defendant were exercising due care. Without a showing of such an aberration in the operation of the apparatus itself, we are of the view that the probabilities of defendant's negligence do not preponderate, and, we repeat, the court must decide this question of the probabilities for itself, when res ipsa is invoked. Bornstein v. Metropolitan Bottling Co., supra. There are other, more plausible explanations. The inference that plaintiff's own movements (considered apart from their alleged relationship to the asserted looseness of the bar), caused her to fall out, is stronger. See Hollander v. Smith & Smith, 10 N.J. Super. 82, 89 *11 (App. Div. 1950). These movements may have been due to bravado, the recent whisky highball, faintness for any reason, or sheer carelessness. It does not matter which.
The out-of-state decisions cited by plaintiff are entirely consistent with these conclusions. For example, in O'Callaghan v. Dellwood Park Co., 242 Ill. 336, 89 N.E. 1005, 26 L.R.A., N.S., 1054 (Sup. Ct. 1909), the coaster came to a sudden stop; in Brown v. Winnwood Amusement Co., 225 Mo. App. 1180, 34 S.W.2d 149 (K.C. Ct. App. 1931), there was an unusually violent jerk which raised plaintiff's body almost to an upright position and in a different direction than would the normally exerted centrifugal force; in Eldred v. United Amusement Co., 137 Or. 452, 2 P.2d 1114 (Sup. Ct. 1931), a safety chain broke; in Dickson v. Bounds, 190 Ark. 86, 77 S.W.2d 456 (Sup. Ct. 1934), a water-toboggan slide jumped its tracks. See also Bibeau v. Fred W. Pearce Corp., 173 Minn. 331, 217 N.W. 374 (Sup. Ct. 1928); Pontecorvo v. Clark, 95 Cal. App. 162, 272 P. 591 (Ct. App. 1928); Carlin v. Smith, supra. See also Reinzi v. Tilyou, 252 N.Y. 97, 169 N.E. 101 (Ct. App. 1929) (no discussion of res ipsa, however), and Brennan v. Ocean View Amusements Co., 289 Mass. 587, 194 N.E. 911 (Sup. Jud. Ct. 1935) (did not use res ipsa, but noted that other cases under similar facts had invoked the doctrine). In the Brown case, supra (34 S.W.2d at page 152), it was specifically required that the plaintiff show that "the movement of the device was extraordinary for that particular mode of transportation."
To supply the essential "unusual occurrence" plaintiff relies on her statement that she felt a "different lurch, rather strong" (which she amplified, after further questioning by counsel, by saying it was a "different lurch than the turns or the curves that you go around"), to show that the coaster behaved erratically. But lurches, as such, are not erratic or unusual on roller coasters. It is the lurches, the sudden movements, the rapid turns and plunges, which provide the very thrills which plaintiff was seeking. They are ordinary, not unusual, in such an apparatus. The distinction is between sudden movements which the very nature *12 of the activity entails and movements which are so unusual, even with such an activity or device, as to warrant the inference that the person in control of the conveyance departed from a reasonable standard of care. It must be remembered that the proprietor of an amusement park owes no duty to protect patrons from the obvious risks that are necessarily incidental to the use of the device. Clayton v. New Dreamland Roller Skating Rink, Inc., 14 N.J. Super. 390, 395 (App. Div. 1951); Griffin v. De Geeter, 132 N.J.L. 381, 382 (E. & A. 1945). By the use of language like "sudden lurch," "different than the turns or curves you go around," and "rather strong," plaintiff was not, in our judgment communicating the fact of an aberration from the normal operation of the coaster sufficient to invoke the rule of res ipsa. This verbiage is but a mixture of naked conclusion and subjective impression. Compare the observation of Chief Judge Cardozo in Murphy v. Steeplechase Amusement Co., 250 N.Y. 479, 166 N.E. 173, 174 (Ct. App. 1929): "He cannot help himself to a verdict * * * by * * * the facile comment that it threw him with a jerk." Cf. Jackson v. Dreamland Coaster Co., 4 N.J. Misc. 924 (Sup. Ct. 1926) (not involving res ipsa, wherein the testimony specifically described the aberrant conduct of the roller coaster). Plaintiff's experience with roller coasters, and with this one in particular, was apparently limited. There was no objective or other corroboration of her description of the extremity of the lurch, and, if evidence of the defendant is to be considered, three of defendant's witnesses, who were experienced riders, said they experienced no unusual movements. Judge Cardozo went on to say in the Murphy v. Steeplechase Amusement Co. case, supra (166 N.E. at page 174) (the facts of the case are not directly analogous):
"One who steps upon a moving belt and finds his heels above his head is in no position to discriminate with nicety between the successive stages of the shock, between the jerk which is a cause and the jerk, accompanying the fall, as an instantaneous effect. * * * If the movement was spasmodic, it was an unexplained and, it seems, an inexplicable departure from the normal workings of the mechanism. An aberration so extraordinary, if it is to lay *13 the basis for a verdict, should rest on something firmer than a mere descriptive epithet, a summary of the sensations of a tense and crowded moment." (Emphasis supplied)
And see 2 Harper & James, Law of Torts (1956), § 19.2, pp. 1065-6, and the cases cited at p. 1065, f.n. 9.
As to the trial judge's partial reliance on McKee's testimony for concluding that res ipsa loquitur applied here, we have already stated our conclusion that his opinion that a rider could not fall out if she did not stand up is not in accord with common experience as to probability. Indeed it is belied by the central fact of this case. It does not strike us as warranting reliance for purposes of deciding that res ipsa applies.
We cannot, of course, know whether, in finding for the plaintiff, the jury was relying on the evidence of specific negligence as to the loose bar or the circumstantial evidence of negligence constituted by the doctrine of res ipsa loquitur, both theories being allowed by the court's charge. As it may well have been the latter, we are constrained to find the error in submission of that theory to the jury to have been prejudicial and to require reversal.

III.
Defendant has offered certain additional objections to the charge of the court to the jury. In view of the conclusions already arrived at, these need no extended discussion. At one point the charge stated that defendant must exercise a "high degree of care." This is not the law of this State. However, no objection was taken to this portion of the charge, and we find no "plain error," as the court later defined "high degree of care" as "that degree of care which the circumstances justify and warrant."
Error was also urged as to an instruction that defendant has the burden of proving contributory negligence without first stating that this burden does not arise until plaintiff first proves negligence on defendant's part. But this was corrected by the court after objection by defendant.
*14 The other objections to the instructions have been necessarily passed upon in the discussion of the loose bar and of the rule of res ipsa loquitur.
Reversed and remanded for a new trial.