# HELEN GIBSON McCLAIN, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

Court of Criminal Appeals of Tennessee. Jan. 22, 1969.

Certiorari Denied by Supreme Court June 16, 1969.

500

Dan Garfinkle, Morris Levine, Nashville, for plaintiff in error.

George F. McCanless, Atty. Gen., Paul E. Jennings, Asst. Atty. Gen., Alfred E. Wehby, Asst. Dist. Atty. Gen., Nashville, for defendant in error.

## OPINION

GALBREATH, Judge.

Two questions are presented in this appeal from a conviction of voluntary manslaughter in the Criminal Court of Davidson County, Tennessee, and the resulting two to five year sentence. An excellent brief filed on behalf of the defendant clearly delineates these issues to be, (1) Does the proof support the verdict? and (2) Was it reversible error to allow proof of oral exculpatory statements made by the defendant to the arresting

officer who persisted in questioning her after she had requested an attorney?

Ordinarily, the admission of testimony relating to statements made by an accused to an officer under the circumstances suggested by the second proposition set out above would require reversal of a resulting conviction, but in this case it is necessary to consider the full circumstances including the first assignment which goes to the sufficiency of the proof of guilt.

The prosecuting witness, one Milton McClain, Sr., the father of the victim and father-in-law of the defendant, testified that at about 7:00 o'clock, P.M. on the 2nd day of January, 1967, he received a telephone call from the defendant who stated, "This is Helen, I just shot Mack." Earlier that day he had gone to the home of his son in response to another telephone call from the defendant who wanted him to come and talk to the couple who were in the process of separation because of past marital difficulties. While there the witness saw the defendant assault the victim a number of times, once with a butcher knife, once with a small radio she threw at him, and another time by kicking him in the shins, and yet again by hitting him in the back of the head when he turned around. According to the witness, throughout much of the time he was present in the home the deceased was gathering up his clothing with the announced intention of leaving as he had been asked to do by the defendant, but as he would place his clothing in a chair the defendant would throw them on the floor. After an hour or so of witnessing the disturbances the witness was told by the deceased that he might as well go on home and that he, the deceased, would follow him shortly. It

was about an hour later that the defendant called Mr. McClain and told him she had shot his son.

█ It is obvious that the facts set out above as testified to by the only witness of any of the events leading up to the shooting and to whom an undisputed admission was made that the shooting had occurred was enough to justify the verdict of the jury. Indeed, it standing alone was proof of a higher degree of homicide than that found by the jury. A finding that the defendant killed the victim with a pistol raised a presumption that she was guilty of murder in the second degree.

> "* * * from the mere fact of killing, without more, the law presumes only murder in the second degree." Witt v. State, 46 Tenn. 5.

> "Where the state proves the commission of a homicide, there arises a presumption of second degree murder. To reduce homicide from second degree murder there must be evidence of justification or mitigation. The burden is on the state to raise the offense to murder in the first degree. Admission of deliberate killing is sufficient so as to raise the offense, as is evidence of killing in an attempt at robbery, or to otherwise gain deceased's property. The offense is not raised by proof of killing with a deadly weapon. The burden of reducing the offense to manslaughter is on the defendant, but defendant sustains the burden by raising a reasonable doubt in the jury's mind whether defendant is guilty of second degree murder." Underhill's Criminal Evidence, 5th Ed. Sec. 657.

It is thus seen that if no other proof had been added to the prosecuting witness' testimony, the jury would

have been justified in returning a verdict of guilty to second degree murder. In order to carry the burden cast upon her by the State's proof, it was necessary for the defendant to show something in mitigation. This she did by putting before the jury the very facts that she gave the arresting officer to the effect that the deceased had beaten her immediately prior to the killing and had threatened to beat her again. The defendant exhibited to the officer bruises inflicted by the defendant and the officer caused pictures to be made of the wounds.

■ The only witness to the killing itself was the defendant and thus we are bound by her version of what happened there being nothing in the record to dispute it. She related that after he had been beating on her for some while, she bit the deceased on the chest and that he retired to the bathroom to put some medicine on the bitten area. That he told her when he came out of the bathroom he was going to administer further mistreatment and that she believed him and was thus placed in great fear for her life or safety. That because of this fear, and in an effort to preserve her life, she took a pistol from a hiding place and in her words:

> "I came back to a little hall and I said to him, 'Mac, you're not going to whip me anymore today' And I shut my eyes, I raised up the pistol, I shut my eyes and pulled the trigger."

The deceased, shot between the eyes, fell dead in the bathroom.

■■ We recognize the validity of the legal premise presented on behalf of the defendant that where great bodily violence is being inflicted or threatened on a per-

son by one much stronger with such energy that the person assaulted may apprehend death or great bodily injury, he is justified in killing the assailant. We further agree that one threatened with or in genuine fear of great bodily harm from an aggressor is under no duty to retreat or flee from his own house or attempt to do so, as a prerequisite to the successful maintenance of the theory of self-defense upon a charge of killing the aggressor. See State v. Foutch, 96 Tenn. 242, 34 S.W. 1 (1896); Winton v. State, 151 Tenn. 177, 268 S.W. 633 (1925); Morrison v. State, 212 Tenn. 633, 371 S.W.2d 441 (1963); Wharton's Criminal Law and Procedure, Anderson, Vol. 1, p. 517, § 239.

But:

"To excuse the slayer he must act under an honest belief that it is necessary at the time to take the life of his adversary in order to save his own, and it must appear that there was reasonable cause to excite this apprehension.

\* \* \* \* \* \*

"It is said there must have been an overt act of the deceased at the time showing his deadly purpose; but what is an overt act, and who is to judge whether or not there was such an overt act?

\* \* \* \* \* \*

"The overt act that will justify a defendant in assuming that his own life is then in danger, must depend upon the circumstances of each particular case." Jackson v. State, 65 Tenn. 452, 458, 459.

It must rest with the jury to determine whether or not the circumstances were such as to justify the de-

fendant in taking her husband's life. He was not at the time advancing on her. He was in the bathroom treating a wound and although he had promised to renew the affray, this threat was made at a time when he had the physical advantage over the defendant that would have made it easy for him to have done so. The moment Mrs. McClain picked up the loaded pistol and pointed it at her husband the odds shifted decidedly in her favor. The jury might have reasoned that under the circumstances the defendant should have ordered the deceased from the house instead of shooting him. A reasonable person in the deceased's position at the time would have gladly accepted a suggestion to leave rather than a bullet between the eyes. Until he indicated that he intended to attack the defendant under the circumstances existing at the time of the killing, the jury could conclude that the defendant had no reason to believe her danger was such as justified the taking of a life. If the weaponless deceased had advanced on the defendant, after being warned, the defendant could have shot him at that time and in all likelihood such circumstances would have rendered the slaying justifiably as self-defense. We cannot say as a matter of law that the facts in this case preponderates against the verdict of the jury.

From the entire record it is doubtful if the officer gave adequate warnings of the defendant's constitutional rights to her before obtaining her version of how the killing occurred. The trial court very properly excluded a written statement obtained from the defendant after she had been taken to the station house and had explained rather carefully her constitutional rights and even put in contact with her attorney. Surely, if this

written statement was inadmissible, an oral statement containing substantially the same facts obtained prior to being warned of her rights and being allowed to consult with her attorney was likewise inadmissible.

We hold that the admission of the testimony from the interrogating officer regarding the exculpatory statements made by defendant was error. We do not think it was such error, however, as to require reversal.

The defendant went upon the stand and testified to the identical facts related to the jury by the officer as told him by her. This is not a case where she was forced to take the stand to explain away prejudicial evidence that had been improperly admitted. She, by the nature of the competent proof presented by the State, had to present the factual situation disclosed to the officer for the consideration of the jury in order to excuse, at least in part, the killing. In Hill v. United States, 363 F.2d 176 (5 Cir. 1966) the Court stated:

"We reject this assigned error for a second and entirely different reason. When Hill testified in his own behalf, he substantially repeated the accountant's testimony which is complained about in this assignment. If there was any error in the admission of the accountant's testimony, it was cured by Hill's testimony to the same facts. See Barshop v. United States, 192 F.2d 699 (5th Cir. 1951), cert. den. 342 U.S. 920, 72 S.Ct. 367, 96 L.Ed. 688 (1952). Thus we find no prejudicial error in the admission of the accountant's testimony, or the trial court's refusal to withdraw it from the jury's consideration." 363 F.2d 180, 181.

In this case the testimony of the arresting officer of

the admissions made to him by the defendant did not harm her cause; on the contrary, it corroborated her later testimony and could not have been other than persuasive in the jury's determination that the defendant was not guilty of murder.

The judgment is affirmed.

WALKER, P. J., concurs.

OLIVER, J., concurs in result.