JEROME CAMPBELL et al., Plaintiffs in Error v.
STATE OF TENNESSEE, Defendant in Error.
—469 S.W.2d 506.

April 8, 1971.

Certiorari Denied by Supreme Court June 7, 1971.

Hugh W. Stanton, Jr., Charles C. Burch, A. V. Mc-Dowell, and Edward W. Chandler, Memphis, for plaintiffs in error.

David M. Pack, Attorney General, Thomas E. Fox, Deputy Attorney General, Nashville, Leonard T. Lafferty and J. L. Patterson, Assistant District Attorneys General, Memphis, for defendant in error.

GALBREATH, J. In their joint appeal from convictions and 100 year sentences from the Shelby County Criminal Court for armed robbery, the three defendants below assign numerous errors, some of which challenge the sufficiency of the evidence.

The jury heard the conflicting proof offered by the State and the defense. By its verdict it has resolved the conflicts in favor of the State, and the results, having the approval of the trial judge, are binding on this Court in the absence of a preponderance of the evidence against the verdict. See McBee v. State, 213 Tenn. 15, 372 S.W.2d 173.

In considering whether the evidence before the jury preponderates against the verdict, this "appellate court must apply the rule that credibility of witnesses and conflicts in testimony have all been settled by the verdict of the jury. This makes unnecessary and, indeed, inappropriate, a detailed discussion of that evidence, pro and con, * * * in stating what we conclude the material facts to be as established by that testimony." Hargrove v. State, 199 Tenn. 25, 281 S.W.2d 692.

The evidence, most of it uncontradicted except as to the nature of the roles played by the defendants in the events described, tended to prove the following. On the evening of November 3, 1969, shortly before its closing

hour of 7 p.m. McGee's Super Market in Memphis was robbed by two young Negro men wearing women's stockings pulled over their heads as masks. One had a small nickle-plated revolver, the other a black pistol. A number of witnesses were in the store but none other than Mr. Travis McGee, the proprietor, was able to identify either of the men. Mr. McGee testified that he recognized Thurman Miles and Jerome Campbell in a line-up the next day and in the courtroom as the two bandits who fled the store following the robbery with almost $19,000.-00 including about $300.00 in change. Most of the coin later recovered from the automobile occupied by the defendants was in wrappers the same color and containing the same amounts as those removed from the victim's premises by the robbers.

A witness, one Herman Williams, who, with another employee of the store, saw what was taking place and ran out the back door, observed a white Cadillac with orange license plates parked a short distance from the store and saw a man get in the rear of the car. For some reason not clearly revealed in the record, this car and the man entering it aroused the witness's suspicions and he returned to the store and told Mr. McGee, and the police who were immediately notified were alerted to be on the look-out for a white Cadillac bearing orange license plates in the vicinity of the store. Shortly thereafter a radio police car operator on the look-out for the suspected vehicle observed such a car with the described license tags and gave chase. The Cadillac stopped and the patrolmen in the squad car got out of their vehicle with drawn pistols and approached it and the four men one of the officers said were in it. As might have been predicted, the

Cadillac drove away rapidly as the officers neared it. The officers fired at it and again took up the chase and alerted other units of the flight of the automobile, which they kept in sight until it was intercepted by another police car blocking its path. Three men ran from the car amid shots from the police. The defendant Jerome Campbell was found hiding among some trash cans nearby, Doc Walker was lying beside a house about 150 yards from the Cadillac under which the third defendant Thurman Miles was found. As one of the police officers, Patrolman Davis, approached him, Campbell made the spontaneous utterance, "It wasn't none of me. They made me go with them." All the defendants testified that they had nothing to do with the robbery.

The defendant Miles, found under the Cadillac, said that he was just walking along the street when he was struck by the Cadillac. Doc Walker and Jerome Campbell admitted being in the Cadillac driven by Walker who had borrowed it from his brother but said that they were flagged down by two "dudes" who offered to pay five dollars for a ride to the Walker Homes area. While transporting these men, one of whom was said to be named James Reed, the police car was observed behind them and they pulled over and stopped. Then, according to Walker and Campbell, one of the men who had asked for a ride pulled a pistol and ordered Walker to drive off resulting in the chase already described. Both of these men say they ran from the Cadillac because they were afraid of being shot by the police, whom all three of the defendants contend beat them after their arrests.

Through the doors left open the police could see inside the Cadillac some paper money and coins, and a black .38 caliber revolver identified at the trial as being the same weapon stolen from a witness, Mrs. Shirley Gaia, by the defendant Jerome Campbell during a liquor store holdup some six weeks before. A trench coat was found outside the car about a foot from the right rear wheel. Inside the pockets of this coat were found two women's stockings and a chrome-plated .32 caliber revolver.

The assignments of error going to the sufficiency of the evidence are overruled for the reasons set forth prior to the summary of the proof, which cannot be said to preponderate against the verdict but which, taken as a whole, so overwhelmingly supports a finding of guilt that it renders harmless error which otherwise might raise a reasonable doubt as to its prejudicial effect on the jury's verdict. See Harrington v. State, 215 Tenn. 338, 385 S.W.2d 758.

The error referred to above is set out in assignments of Campbell and Miles, identified by the owner of the store as the two bandits wearing stocking masks. The trial judge, on objection by the State, refused to allow the defendants when they took the stand to place over their heads stockings to exhibit to the jury what they would look like under the conditions witnesses for the prosecution testified the bandits were disguised. Counsel for the State referred to a rather old case in this State involving footprints as authority for his position in resisting the demonstration, and in its brief before us the State relies on this case. Stokes v. State, 64 Tenn. 619, for authority. In *Stokes* the attorney general set before

the jury a pan containing the mud impression of a foot found near the scene of a slaying and asked the defendant to demonstrate to the jury the manner in which his foot would match the mud print. The Court observed:

"Because of this action of the Attorney General, and the assent of court thereto, this cause is reversed and remanded. In the presence of the jury the prisoner is asked to make evidence against himself. The court should not have permitted the pan of mud to have been brought before the jury, and the defendant asked to put his foot in it. We are satisfied the jury was improperly influenced thereby. And it is no sufficient answer that the judge afterwards told the jury that the refusal to put his foot in the mud was not to be taken as evidence against him. The bringing in of the pan of mud and the request of the Attorney General was improper and should not have been permitted by the court."

*Stokes* correctly states an application of the constitutional protection against self incrimination. This case and its principle has no application here because an exact opposite right is involved, one of equal importance, the right of every person accused of crime to be heard in his own defense. (Constitution of Tennessee, Article I, Section 9; T.C.A. sec. 40-2001.) While it is true that no person accused of crime may be compelled to testify at his trial, he may do so if he so chooses; and such evidence is competent if he desires to introduce the evidence in his own behalf or in any event if he consents to its introduction.

In another old Tennessee case remarkably similar, albeit contra, to *Stokes* in that it too involved an offered comparison of the defendant's foot to prints left near the scene of a crime, the Supreme Court held that it was error *not* to allow the defendant to introduce proof that his bare foot did not match the impressions left in the earth. In reversing, the Court said:

"An examination in this case in presence of court and jury, would have given the most satisfactory result. But what they might say, was to be judged of and weighed by the jury, and not assumed to be manufactured in advance of hearing the witnesses. The real matter was to ascertain how the fact was, and the best means of ascertaining the truth of the case is what is desirable, if truth, and not mere technical routine, is the object of the law." Lipes v. State, 83 Tenn. 125.

■ However, in view of the compelling weight of the clear evidence of guilt introduced by the State and the patent incredibility of the explanations of the defendants, the error involved here was completely innocuous considering the totality of the circumstances, even to the extent of allowing us to declare a belief that it was harmless beyond a reasonable doubt so as to meet the test laid down in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284; and Huffman v. Tennessee, 3 Tenn.Cr.App. 124, 458 S.W.2d 29.

■ Another error is claimed by Campbell who contends that his rights were violated when the court allowed testimony over objection as to the statement made as Officer Davis approached the defendant to place· him

under arrest. This statement, "It wasn't none of me. They made me go with them," was not a statement, admission or confession that is subject to the rules laid down by decisions such as *Miranda*. The defendant was not in custody and subject to interrogation. His spontaneous utterance was not only completely voluntary and uninduced by any effort to question, but was completely exculpatory in nature. Miranda does not inhibit testimony about such voluntary spontaneous utterances. See Fox v. State, Tenn.Cr.App., 441 S.W.2d 491.

Also without merit are the challenges to the admissibility of exculpatory statements made by the defendants after being taken into custody and advised of their rights against self incrimination and to counsel, and in Campbell's case not being permitted to make a telephone call. It will not be necessary to even consider the adequacy of the warnings found to be in order by the trial judge in a hearing outside the presence of the jury since each of the defendants took the stand and voluntarily repeated to the jury the accounts given the police. If there had been error in admitting the State's proof as to the statements, although we find none, any objection to the evidence was waived when the defendants themselves asked the jury to believe what the State had proved. As we said in rejecting a similar assignment in McClain v. State, Tenn.Cr.App., 445 S.W.2d 942:

"In this case the testimony of the arresting officer of the admissions made to him by the defendant did not harm her cause; on the contrary, it corroborated her later testimony * * *."

■ The evidence obtained from the automobile at the time of the arrest and from the coat found in the street nearby were not unreasonably seized as contended by the defendants. The bulk of the incriminating evidence was plainly visible to the arresting officers through the doors of the Cadillac which the fleeing defendants had left open. Both the automobile and the coat left in the street near the car, containing in its pockets a pistol and ladies stockings, were abandoned in the literal sense of the word; and it would have been most unreasonable to require the police to leave the car containing currency, some of which was in danger of blowing away, while they returned to the station house for a search warrant to accomplish that which they had the right to do incident to a legal arrest. Neither the Federal nor State Constitutions forbid warrantless searches, only unreasonable searches and seizures. Under almost identical circumstances the United States Supreme Court has approved the detailed search of an automobile after the arrest and incarceration of its occupants and after the vehicle had been removed to a police garage for storage. See Chambers v. Maroney 399 ,US. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419. Also, where suspect articles are in plain view of the arresting officers, no search is involved. Chadwick v. State, Tenn.Cr.App., 429 S.W.2d 135; Raynor v. State, Tenn.Cr.App., 447 S.W.2d 391.

■■ An assignment of error on behalf of Campbell goes to the introduction of testimony from a witness, Mrs. Shirley Gaia, that he robbed her in a liquor store hold-up a few weeks before the hold-up of McGee's Super Market and took at the time the black pistol, identified by its serial number, found on the rear floor of the Cadillac.

As a general rule of law evidence of prior unrelated criminal activity is not relevant and admissible even though it be of crimes of the same character. See Mays v. State, 145 Tenn. 118, 238 S.W. 1096. This long recognized rule does not exclude testimony of other related crime that is relevant to prove a material element of the crime under investigation. A pertinent inquiry in the case before the jury here was, "Who had possession of the pistols used to commit the robbery at the time of the hold-up?" The answer to this pertinent question reveals the answer to the principal issue under investigation, "Who robbed the McGee Super Market?" It therefore became relevant to prove, if possible, that the accused had obtained possession of the pistol and still had it moments after the robbery. It would have been equally relevant for the same reason to have proved that the other pistol involved had been lawfully purchased by one of the defendants at a hardware store a few weeks before. Proof of the method of acquiring the pistol, whether lawfully or unlawfully, was incidental to the investigation but necessary to establish the main fact of possession. For, as repeatedly held in this State and other jurisdictions, "Evidence which is relevant to defendant's guilt is not inadmissible because it proves or tends to prove him guilty of another and distinct crime." Mays v. State, *supra*.

A most interesting and exhaustive treatment of the rule against the admission of proof of other criminal activity of a defendant and detailed considerations of the exceptions thereto is found in People v. Molineux, 168 N.Y. 264, 61 N.E. 286.

 Another assignment of error before us on behalf of the defendant Campbell complains that he was not permitted to inquire into the background of a witness who was called to testify that he observed and recognized the defendant when the pistol was stolen in the liquor store hold-up. The court sustained an objection to a general question propounded to the witness, outside the presence of the jury, as to whether or not he had been in jail. The attorney for the defendant then asked the witness, ''Have you ever been convicted of any crime?'' Again the State objected and was sustained. The rule in this State is that a witness, including a testifying defendant, may not be impeached by evidence of or inquiry about convictions not involving moral turpitude. State v. Fowler, 213 Tenn. 239, 373 S.W.2d 460; State v. Jones, 215 Tenn. 206, 385 S.W.2d 80. The question as asked was too broad and could well have elicited incompetent proof and thus was objectionable.

 In disposing of the final assignment of error we find nothing to indicate passion or caprice on the part of the jury in the fact that it imposed the rather unusual sentence of 100 years. The maximum punishment for the offense is death, and the sentence imposed by the jury was within that allowed by law. See Edwards v. State, 202 Tenn. 393, 304 S.W.2d 500.

The judgments are affirmed.

Oliver and Mitchell, JJ., concur.