# JOE LEE MARTIN, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

Court of Criminal Appeals of Tennessee. Aug. 19, 1968.

Certiorari Denied by Supreme Court May 5, 1969.

Hugh W. Stanton, Jr., Asst. Public Defender, Memphis, for plaintiff in error.

George F. McCanless, Atty. Gen. of Tenn., Thomas E. Fox, Deputy Atty. Gen., Nashville, Sam J. Catanzaro, Asst. Dist. Atty. Gen., Memphis, for defendant in error.

## OPINION

OLIVER, Judge.

Plaintiff in error, the defendant below, was convicted of second degree murder in the Criminal Court of Shelby County and was sentenced to not more than twenty years in the State Penitentiary. His motion for a new trial being overruled, he prayed and was granted and has perfected an appeal in the nature of a writ of error to this Court.

The Shelby County Public Defender represented the defendant in the trial below, and also in his appeal to this Court. The State concedes that from this circumstance the Court may take judicial notice of the fact that the defendant was and is indigent, although there has been no formal adjudication of indigency.

There are seven Assignments of Error, each of which was also assigned as error in the defendant's motion for a new trial. In our view the questions raised by the fifth Assignment of Error are determinative. It reads as follows:

"The Court erred in admitting over defendant's timely objection testimony of police officers as to statements allegedly made to them by the defendant."

Melvin L. Matthews was stabbed to death on the night of October 7, 1966, terminating a beer-joint fight precipitated by remarks about the defendant's girl friend. The defendant and his girl friend were arrested in connection with the homicide later that night, about 1:10 a.m., October 8th, and were taken to Police Headquarters and jailed. The arresting officer, a Memphis policeman, who was accompanied by two other police officers, testified as follows, in the absence of the jury, regarding the advice he gave them concerning their constitutional rights:

"A  I told him that—told them that they did not have to make a statement, that anything they did tell us could be used in a Court of law, and they could— could get them a counsel, or talk to their lawyer."

Upon cross-examination, the same officer testified:

"Q  And when you got there, you told him that he had a right to call a lawyer and get a lawyer if he wanted one?

A  Yes sir, or make no statements, if he didn't desire.

Q  And that anything he said could be used against him?

A  Yes sir.

Q  But you didn't tell him that he had a right to have somebody furnish a lawyer if he didn't have one of his own, did you?

A We said he could call his lawyer, or employ a lawyer. I believe that's the way we put it."

After the arresting officer detailed the defendant's oral inculpatory statement made to him at the time of the arrest which amounted to a confession, the court overruled defense objection and held that the defendant was advised of his constitutional rights and his statement was voluntary and admissible. In the presence of the jury, the same officer testified:

"Q State to the Court and jury just what you told him.

A We advised him that he could remain silent, he didn't have to make a statement. That any statement that he made could be used in a Court of law, we advised him that he could get an attorney, or talk to his attorney, or either get him an attorney."

He then related to the jury the oral incriminating statement made by the defendant in which he related some of the inculpatory details of the fatal encounter.

■ Unquestionably, the trial judge committed prejudicial error in holding that the defendant was adequately advised of his constitutional rights by the arresting officer prior to interrogating him, and in admitting the defendant's oral statements made to that officer during that in-custody interrogation. In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, the Supreme Court of the United States said, *inter alia*:

"To summarize, we hold that when an individual is taken into custody or otherwise deprived of his free-

dom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him."

The officer who arrested the defendant and interrogated him did not advise him that he had a right to confer with counsel before making any statement or answering any questions, nor that he was entitled to have counsel present with him during any interrogation, nor that if he was financially unable to employ a lawyer one would be appointed to represent him and be present with him prior to and during the interrogation, if desired. Thus, the warnings given the defendant fell far short of

the constitutional requirements prescribed by *Miranda.* In its Brief, the State expressly agrees:

"The information given the defendant does not literally comply with the requirements set out in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The trial judge found it substantially complied with the requirements of the *Miranda* case. In the present case, the defendant was not informed that in the event he was unable to employ counsel, one would be appointed for him before he was required to make any statements. This question was considered by the State Supreme Court in an unpublished opinion, Willie Lightfoot v. State, (Opinion dated May 5, 1967, eighteen days after the trial of this case. Since the opinion is unpublished, a copy is attached to this brief). The record shows the defendant was represented by a member of the Public Defender's Office. No formal order was entered showing the defendant to be indigent but it is conceded that the Court can judicially know that the defendant was indigent. Further, the State is unable to conceive of any argument to show that this case is different from the *Lightfoot* case."

In the *Lightfoot* case, above referred to, reversing and remanding for a new trial, the Supreme Court said this:

"The defendant's first assignment of error insists that the trial court erred in admitting into evidence the testimony of certain police officers regarding statements made by the defendant, implicating him in the robbery with which he is here charged. The basis of defense counsel's insistence is, at least in part, that

defendant was not advised of his constitutional right to counsel and, more particularly, to have counsel provided for him by the State if he could not afford privately retained counsel. It might be noted at this point that each of the several police officers testified, generally, that the defendant was advised of his constitutional rights and told that he had a right to counsel. However, none of these officers testified, specifically, that the defendant was advised that counsel would be provided for him if he could not afford privately retained counsel. The defendant here has been adjudged an indigent person.

"This case was tried on July 8, 1966, shortly after the release of the United States Supreme Court's opinion in Miranda v. Arizona (1966) 384 U.S. 436, 86 S.Ct. 1602, on June 13, 1966. This Court is of the opinion that it cannot be seriously contended that the statements made by the defendant and concerning which testimony was given by these several police officers over the objection of defense counsel, were not the result of custodial interrogation as defined in Miranda v. Arizona, supra. Further, this Court holds the view that the opinion in Miranda v. Arizona, supra, places upon the prosecution, when it attempts to introduce into evidence testimony concerning admissions of a defendant resulting from custodial interrogation, the burden of establishing the admissibility of these statements. In order for the State to establish such admissibility, it must, at the outset, show that the defendant was, prior to his making these statements, advised of his right to remain silent, that anything he says could be used against him, that he

has a right to counsel, and that, if he cannot afford counsel, counsel will be provided for him by the State. There is not sufficient evidence in this record to show that this was done in the present case. In view of this, we find it unnecessary to consider the remainder of the assignments of error."

Later the same morning he was arrested, the defendant was again interrogated at Memphis Police Headquarters by an officer of the Homicide Bureau. In the absence of the jury, this police officer testified that "Around 10:15 a.m., the next morning, I went down to the detention area and checked him out and brought him back to the Homicide Bureau, where I seated him and I advised him of the charge that he'd been charged with, and of his right to an attorney of his own choosing or a Court appointed attorney. His right to remain silent, and refuse to make any statement, and that anything he said could, and may be used as evidence against him at the time of trial in Court"; and that after advising him that he would be charged with murder, the defendant then made a full oral confession in which he related all the events of the argument and fight which culminated in his fatal stabbing of the deceased. Over objection of defense counsel, the court held that this interrogating officer advised the defendant as to his constitutional rights and that the statement was voluntary and admissible. In the presence of the jury, this officer, after repeating almost exactly his above-quoted statement to the defendant concerning his rights, related the defendant's oral confession.

Here again, the court was in error. As in the first interrogation by the arresting officer, the officer who conducted this second interrogation did not advise the

defendant that he had the right to have an attorney present during the interrogation. That the defendant did not understand that he had such a right is shown by the fact that when the officer proposed or suggested that the defendant make a written statement, or sign a statement, "he said that he didn't want to give a statement if he would have to sign it, until he could talk to an attorney." The court held that this testimony regarding a written statement was not admissible, and it was not presented before the jury. But it clearly indicates the defendant's idea that his right to consult an attorney related only to giving a written statement. But however this may be, the error in permitting the second interrogating officer to relate the defendant's oral confession to him inheres in and proceeds out of the erroneous admission of the arresting officer's testimony about the incriminating statements made by the defendant at that time. The first interrogation was shortly after 1:00 a.m. on October 8, 1966, and the defendant was then taken to jail; the altercation and the killing had occurred earlier that night; the second in-custody interrogation was about 10:15 a.m. the same morning. Under these circumstances, the second statement was clearly the fruit of the first one and was equally inadmissible.

In Evans v. United States, 375 F.2d 355 (8th Cir. 1967), a defendant arrested and interrogated at police headquarters by a police officer concerning a post office robbery, without being fully advised of his constitutional rights, admitted participation. Three days later, interrogated at the city jail by a United States Postal Inspector, after being fully advised of his constitutional rights, he made another confession which was admitted in evi-

dence. Reversing and remanding for a new trial, the Court held that the totality of the circumstances tainted and infected the subsequent confession with the poison of the prior unconstitutional confession and rendered its admission reversible error. The Court said:

"* * * Thus, at the time the warnings were given and the confession relied upon by the Government was obtained, Evans had already fully revealed his involvement in the robbery. As Justice Jackson aptly stated in United States v. Bayer, 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947):

'Of course, after an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag. The secret is out for good. In such a sense, a later confession always may be looked upon as fruit of the first.' 331 U.S. at 540, 67 S.Ct. at 1389.

"* * * Of course, if Evans had been timely and fully apprised by the local officers of his constitutional right to remain silent in accordance with the rules promulgated by *Miranda,* the incriminating statements later given to Thorn [the Postal Inspector] would be invulnerable to constitutional attack."

■ There is nothing in the record before us to indicate that the defendant at any time or in any way rejected or waived his right to the assistance of counsel. The teaching of *Miranda* is plain:

"In Carnley v. Cochran, 369 U.S. 506, 513, 82 S.Ct. 884, 889, 8 L.Ed.2d 70 (1962), we stated: '[I]t is

settled that where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request.' This proposition applies with equal force in the context of providing counsel to protect an accused's Fifth Amendment privilege in the face of interrogation. Although the role of counsel at trial differs from the role during interrogation, the differences are not relevant to the question whether a request is a prerequisite.

"Accordingly we hold that an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation under the system for protecting the privilege we delineate today. As with the warnings of the right to remain silent and that anything stated can be used in evidence against him, this warning is an absolute prerequisite to interrogation. No amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead. Only through such a warning is there ascertainable assurance that the accused was aware of this right.

*    *    *    *    *    *

"An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver. But a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained. A statement we made in Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962), is applicable here:

'Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.' "

The fifth Assignment of Error is sustained. It is neither necessary nor proper to discuss and consider the other assignments. McCroskey v. State, 42 Tenn. 178; Illinois Central R. Co. v. Moriarity, 135 Tenn. 446, 186 S.W. 1053; Middle Tennessee R. Co. v. McMillan, 134 Tenn. 490, 516, 184 S.W. 20.

The judgment of the trial court is reversed and the case is remanded for a new trial.

WALKER, P. J., and GILLIAM, J., concur.