JERRY DEAN MITCHELL, Plaintiff in Error, v.
STATE OF TENNESSEE, Defendant in Error.

458 S.W.2d 630.

Court of Criminal Appeals of Tennessee. May 8, 1970.

Certiorari Denied by Supreme Court Sept. 8, 1970.

154 

J. William Myers, Newport, Donald Oakley, Morristown, for plaintiff in error.

David M. Pack, Atty. Gen., Arnold Peebles, Jr., Asst. Atty. Gen., Nashville, Heiskell H. Winstead, Dist. Atty. Gen., Rogersville, for defendant in error.

## OPINION

HYDER, Judge.

Jerry Dean Mitchell appeals his sentence of three years in the penitentiary resulting from his conviction for burglary in the third degree and grand larceny.

Since the first two assignments of error complain that there is no competent evidence upon which the verdict could be predicated, and that the evidence preponderates against the verdict of guilty and in favor of the innocence of the defendant, we will review the evidence briefly.

The Morristown Music Mart was burglarized during the night of July 17, 1968, and goods valued at over one hundred dollars were removed. Most of the articles taken were appliances which were in the shop for repair. Several weeks before the burglary the defendant told Officer Ralph Lamb, of the Morristown Police Department, that the Music Mart would be broken into. Officer Lamb testified that he had known the defendant for several years, and that a few years earlier the defendant had worked for Lamb on a truck. The day after the burglary, the defendant took Officer Lamb to where a number of

the stolen articles were hidden. A television set was found in a field, and a record player and a radio were recovered near the defendant's home. They were all identified as having been stolen in the burglary.

Captain Keith Franklin testified that he interrogated the defendant on August 19, 1968. He stated that he advised the defendant of his Constitutional rights before asking him any questions, and he introduced a signed statement containing the "rights" and the signature of the defendant acknowledging that he understood his rights, that he waived them, and also that he agreed to answer questions. The record does not show that Captain Franklin talked to the defendant about the Music Mart burglary on August 19th. On August 20th Captain Franklin again talked to the defendant. The Captain was asked:

"Did you again advise the defendant, Jerry Dean Mitchell, of his rights that you had advised him the day before?"

And the officer answered:

"I advised him that his rights had already been explained to him, and asked him if he was involved in this particular case, and he said—."

At this point an objection was made and the jury was excused. The trial judge heard testimony and argument of counsel and ruled:

"Well, a man's constitutional rights are the same in one case as they are in another, and if a man understands his rights—He said the defendant, Jerry Dean Mitchell, told him that he did understand his rights.

That was before he discussed any case with him, so if he understands his constitutional rights in one case, he understands them in another, because his rights are exactly the same."

And he overruled the motion to suppress the testimony.

Captain Franklin then testified that the defendant, on August 20, 1968, admitted to him that he showed Donald R. Carpenter how to gain entrance to the building, that he did not go inside himself, but that he did help carry the merchandise away.

Officer Lamb was present when the defendant was interrogated on August 20, 1968, and he corroborated the testimony of Captain Franklin regarding the statement against interest made by the defendant.

The District Attorney General asked Captain Franklin why he did not talk to the defendant from July 18, 1968 until August 19th and the officer testified that he couldn't find the defendant during that period.

Officer Lamb testified that he called the defendant the day after the burglary and told him that he wanted the merchandise from the Music Mart break in. He said that he went to the defendant's house and picked him up and asked him to take him to where the merchandise was located, which the defendant did. On cross examination Mr. Lamb stated that he did not advise the defendant of his Constitutional rights when he went to get the merchandise. He said that he did not then arrest the defendant because he did not have instructions to do so, and that he was not accusing the defendant of the crime.

The defendant testified and stated that the reason the

stolen articles were at his house was because he knew that the police wanted proof. He said that he was walking down the railroad track when he saw Donald Carpenter carrying articles and hiding them along the tracks. He said that he had known Donald Carpenter for about two years, and that a long time before this on three or four occasions Carpenter had told him that the Music Mart was going to be broken into and that they were going to do it on Wednesday and they were going to try to sell the stuff to Bill Mackey. He testified that Carpenter was AWOL from the Army and that he stayed and slept in a railroad car.

The defendant denied admitting to Officers Lamb and Franklin that he told Carpenter how to break into the Music Mart, and he denied telling them that he helped carry away the stolen goods. He did say on direct examination that Officer Lamb told him that he couldn't get into trouble as long as he was helping him. He said that he did not tell Carpenter how to break in the place and he did not help him break in. He did not testify that Captain Franklin failed to advise him of his Constitutional rights before interrogating him, and he did not state that he made any statements to the officers which were involuntary. He simply denied making the inculpatory statement described by Officers Franklin and Lamb.

■ ■ On this issue, concerning the statement alleged to have been made by the defendant to the police on August 20th, the testimony is in direct conflict. Conflicts in testimony and the credibility of witnesses are settled by the verdict of the jury when approved by the

trial judge. Gann v. State, 214 Tenn. 711, 383 S.W.2d 32. We are not permitted to reverse a conviction unless the evidence preponderates clearly against the verdict of guilty and in favor of the innocence of the accused. McBee v. State, 213 Tenn. 15, 372 S.W.2d 173. Certainly the defendant here has not shown that the evidence preponderates against his guilt and in favor of his innocence. There is sufficient evidence of his guilt to support the verdict. We overrule the first two assignments of error.

It is contended that the trial court erred in permitting Captain Keith Franklin and Officer Lamb to testify as to statements, admissions or confessions alleged to have been made by the defendant. It is argued that the statements were obtained in violation of the defendant's constitutional rights, and upon objection being made at the trial to their admission, the trial judge should have excluded them from the proof. In his brief, counsel for the defendant relies on the United States Supreme Court opinions in *Escobedo* and *Miranda,* and goes on to state that, after extensive research, no case has been found dealing with the particular question in the instant case.

Captain Franklin testified that on August 19th he advised the defendant of his legal and constitutional rights, and the defendant signed a statement acknowledging this fact. These warnings given at that time comply with the mandate of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Of course the question here raised concerns statements of the defendant resulting from questioning on the next day, August 20th, when the undisputed proof shows that the defendant was not again given the "warnings." Also, it appears from the record,

that the interrogation on August 19th was in connection with another case than the Music Mart break in.

Certainly the prosecutorial use of an involuntary confession is constitutionally impermissible. Brooks v. Florida, 389 U.S. 413, 88 S.Ct. 541, 19 L.Ed.2d 643. A coerced confession vitiates a conviction, even if there is other evidence of guilt. Lynum v. Illinois, 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922. A defendant who objects to the admission of a confession alleged to have been given by him is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of the confession are actually and reliably determined. Such determination should be made prior to the admission of the confession to the jury adjudicating guilt or innocence. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908.

The trial judge held a hearing out of the presence of the jury during which time some proof was heard and counsel was given ample opportunity to argue their respective positions concerning the admissibility of the statement the defendant is alleged to have given the officers. The trial judge ruled the statement admissible. There is no evidence that the statement was coerced, and that is not contended here; and there is nothing to indicate that the statement was involuntary. The matter is now before us with the presumption that the trial judge ruled correctly, and we may not reverse his ruling unless we find that the evidence preponderated against his finding. Lloyd v. State, Tenn., 440 S.W.2d 797. The evidence does not preponderate against his ruling.

■ The complaint concerning the admission of the statements which the defendant made to Officer Lamb, when the policeman went out and recovered the stolen goods the day after the break in, have no merit. On that occasion the defendant did not make any inculpatory statement. It is true that he took the officer to the stolen goods, but his words and his actions on that occasion were testified to by him when he took the stand in his own defense. This does not constitute reversible error. McClain v. State, Tenn.Crim.App., 445 S.W.2d 942.

■ The last assignment of error complains that it was prejudicial error to allow the State to introduce proof that the defendant escaped jail after being charged with this crime.

This testimony was admissible. This issue is discussed well in 22A C.J.S. Criminal Law § 631, which reads:

"As tending to show guilt, consciousness of guilt, or knowledge, evidence is generally relevant which shows that after accused was taken in custody he escaped, attempted to escape, or prepared to escape."

See Marable v. State, 203 Tenn. 440, 313 S.W.2d 451.

We have considered all assignments of error and, finding no reversible error in this record, they are overruled.

■ The jury found the defendant guilty of burglary in the third degree and of grand larceny, and fixed punishment of three years for each crime. The trial judge sentenced the defendant to three years for each offense, and then said: "The sentences to merge into each other as One maximum sentence of Three (3) Years." Under our law the defendant must be released on the judgment

on the conviction of grand larceny. Cronan v. State, 113 Tenn. 539, 82 S.W. 477. The judgment of three years in the penitentiary for burglary in the third degree is affirmed.

WALKER, P. J., concurs.

DWYER, Judge (dissenting).

I must respectfully dissent from the majority opinion in this cause.

I predicate my dissent on one premise alone. In all other particulars pertaining to the treatment of the assignments of error, I concur with the majority opinion. My dissent with my fellow judges is bottomed on the statement of Mitchell obtained by the interviewing officer which was introduced into evidence over objection of counsel. This statement was highly inculpatory and damaging to the defendant. To bring into focus my dissent it will be necessary to digress on the back-ground of how the statement or confession was taken.

The investigating officer in this case, a member of the Morristown Police Department, testified that he interviewed Mitchell in the City Jail of Morristown on August 19, 1968, at 10:50 A.M. He was interviewing Mitchell on a separate charge than the one in the instant case. He at that time fully and completely advised Mitchell as per the *Miranda* holdings. The defendant signed and executed a waiver form at that time which is found in this record and marked as an exhibit to his testimony. It does not appear in this record that he did or did not give any confession or statement pertaining to that charge. The next day, August 20, 1968, the officer testi-

fied that he interviewed Mitchell again in the City Jail and this time in relation to the offense for which he stands convicted. The pertinent part of the record reflects the following pertaining to this interrogation transpired:

"Q Did you again advise the defendant, Jerry Dean Mitchell, of his rights that you had advised him the day before?

"A I advised him that his rights had already been explained to him, and asked him if he was involved in this particular case, and he said—

"*Mr. Myers:* May it please the Court, we object to any testimony at this time. I think it's a matter that might need to be taken up outside the presence of the Jury.

"The Court: Alright. Mr. Officer, take the Jury to the Jury room. You will not discuss any phase of this case, gentlemen."

At that time defense counsel urged that the statement not be admitted because the officer did not advise Mitchell as per the *Miranda* holdings. The court permitted defense counsel to cross examine the officer out of the presence of the jury with the record reflecting the following:

"CROSS EXAMINATION
BY MR. MYERS:

"Q Mr. Franklin, is it correct that you did state you did not again read these rights as set out in Exhibit No. 1?

"A I did not read them.

"Q All you said was 'You understand your rights', or words to that effect?

"A Yes, sir.

"Q That's all, in the absence of the Jury."

The trial court overruled the objection and allowed the statement to be introduced. I believe the action of the trial court in allowing the oral confession into evidence was prejudicial and violative of the *Miranda* holdings. There is a complete absence of the *Miranda* warning given at the time of obtaining the damaging statement. The fact of the matter is that the officer testified he did not advise Mitchell again of his rights. The officer made a presumption that Mitchell waived his rights. There is an absence of any intelligent, knowing waiver of his rights in this record.

In Martin v. State, Tenn., 440 S.W.2d 624, 628, the following is found:

"* * * this warning is an absolute prerequisite to interrogation. No amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead. Only through such a warning is there ascertainable assurance that the accused was aware of this right.

\* \* \* \* \* \*

"An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver. But a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact

eventually obtained. A statement we made in Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962), is applicable here:

> 'Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.' "

I feel that the *Miranda* warning must be given as an "absolute prerequisite" before any statement may be introduced into evidence. In absence of this warning the statement is made inadmissible. In the *Miranda* case the Supreme Court of the United States said in substance that it is the letter of the law and not the spirit that must be obeyed. For the reasons stated, I would reverse the judgment entered in this case and remand the cause for a new trial.