Kerrie Lou HAWKINS and Henry Benjamin Waggoner, Appellants,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

April 12, 1977.

Certiorari Denied by Supreme Court Oct. 3, 1977.

Michael H. Adler, Lawrence Pivnick, Billy F. Gray, Earl P. Davis, H. C. Tanner Davis, Memphis, for appellants.

Brooks McLemore, Atty. Gen., Henry E. Hildebrand, III, Asst. Atty. Gen., Nashville, Hugh W. Stanton, Jr., Dist. Atty. Gen., Joseph L. Patterson, William E. Frulla, Asst. Dist. Attys. Gen., Memphis, for appellee.

## OPINION

GALBREATH, Judge.

Appellants, Kerrie Lou Hawkins and her male companion, Henry Benjamin Waggoner, have been convicted in the Shelby County Criminal Court for the second degree murder of Laura Gay Hawkins, the two and one-half year old daughter of Mrs. Hawkins. From their convictions and jury assessed punishments of seventy-seven years and one hundred and ninety-nine years in the penitentiary respectively, the mother and her lover appeal and contend, among other assignments of error, that the evidence did not support findings that the death was caused by them or the degree of the homicide.

It was the theory of the State that the victim died as a result of what is generally referred to as child abuse, or the battered child syndrome. The record is replete with credible testimony, including that of the defendants themselves, that the helpless victim was subjected to repeated beatings, a scalding, and other mistreatment of such intensity as to indicate a total disregard for the welfare and health of the child. Photographs of a before and after nature, showing the healthy condition of little Laura Gay before she had the misfortune to be

introduced into the household shared by the defendants in September of 1975, and the pitiful condition of the maltreated body shortly after death some three months later on December 5, 1975, were exhibited as evidence of the severity of the punishment inflicted.

In spite of the terrible abuse the child had been subjected to, primarily by Waggoner according to most of the proof, she was still physically active on the afternoon of December 5th and in no visible acute distress when the defendant Hawkins was taken to her place of employment at about 5:00 P.M. by another resident of the household, Tempe Brown, a principal witness for the State. Miss Brown, who had formerly shared Waggoner's bed but had apparently in an agreeable manner moved out of his bedroom into another room in the home when Mrs. Hawkins took up residence, testified that when she returned from taking the co-defendant to work, Laura, who had been active and alert when she left, was unconscious and gasping for breath in the bedroom. She testified that Waggoner asked her to call an ambulance and explained that Laura had fallen down and "was in bad shape."

The attending physician in the emergency room at Doctor's Hospital where the victim was taken testified that when admitted the child had no pulse, no blood pressure, displayed no movement, and indicated no spontaneous breathing.

Two medical expert witnesses testified that the cause of death was due to blood loss in various interior portions of the body from multiple injuries including trauma to the head inducing bleeding on the surface of the brain and injury to the brain stem. Brain stem injury, the medical testimony suggested, did not necessarily imply a traumatic injury to that portion of the central nervous system but is descriptive of the condition the patient was observed to be in when examined on admittance to the hospital. Apparently the condition is symptomatic, and does not itself afford a clear explanation of what causes the condition. We take it that the term is somewhat akin to "cardiac arrest", or "shock", in that it describes a physical condition that is medically recognizable, although the observer may not know the causative circumstances.

■ In any event the proof leads inevitably to a conclusion that it was the accumulated effects of the prolonged beatings and resulting injuries that caused death. No single blow described by any of the witnesses would have likely been fatal. Rather it was the gradual deterioration of the health of the victim over a lengthy period during which she literally bled to death from internal injuries that weakened her system and caused death. The evidence supports the jury's conclusion, manifested by their imposition of a harsher sentence in his case, that the defendant Waggoner was primarily responsible for inflicting the many injuries.

The evidence before us also supports the jury's determination that Kerrie Lou Hawkins shares the criminal responsibility for the death of her child. Although placing most of the blame for the injuries inflicted on her paramour, she testified to her many assaults on the baby, including one occasion when she bruised her fingers, causing them to swell. Her testimony corroborated in detail a statement obtained from her by police and the testimony of the co-defendant and Tempe Brown as to her personal role in mistreating Laura Gay, as well as her acquiescence in the mistreatment administered by both Waggoner and Ms. Brown. If nothing else, Kerrie Lou Hawkins was clearly an accessory to the criminal acts of Waggoner.

■ That the manner of death supports conviction for murder in the second degree and not just manslaughter, as urged by other assigned error, is well settled. Even though the actions of Waggoner in obtaining medical attention would seem to militate against any malicious intent to cause the victim's death, it has been repeatedly held by our Supreme Court that the requisite malice and intent may be inferred from the act of slaying itself (*Witt v. State*, 46 Tenn. 5 (1868)) so as to support second degree murder.

Actually, our Supreme Court has even gone further, and in a case remarkably similar to this one, insofar as the events leading up to the death of the victim were

concerned, held that proof of the prolonged beating of a child until the infant eventually died, will support a conviction for murder in the first degree. *LaChance v. State*, 524 S.W.2d 933 (Tenn.1975).

We affirm the grade of the offense as set out in the indictment and found in the verdict to be murder in the second degree.

We overrule the assignments challenging the admissibility of the pictures showing the pitiful corpse of the innocent victim. They were relevant and material to show the extent of the wounds inflicted on the body. See *Graves v. State*, 489 S.W.2d 74 (Tenn.Cr.App.1972). The photographs have probative value on an issue in dispute. When photographs, gruesome in nature and likely to appeal to the emotions of the jury, are not probative of some contested factual issue they are not admissible. If probative, they are. See *Palmer v. State*, 1 Tenn.Cr. App. 223, 435 S.W.2d 128 (1968). In this, they are no different from other demonstrative evidence. If the evidence is necessary to develop some relevant point that the jury needs explained, it is admissible. If the evidence is not relevant or probative on some issue in dispute, it is not.

We have carefully reviewed the entire record and have considered all the assignments of error.

We affirm.

RUSSELL, P. J., and DAUGHTREY, J., concur.