OPINION
DROWOTA, Justice.
The defendant, Edward Jerome Harbi-son, appeals directly to this Court his conviction of first degree murder and the sentence of death imposed by the jury, and his convictions of second degree burglary and grand larceny, for which he was sentenced to three years in the state penitentiary. He raises numerous issues in this appeal; but, after careful review of the entire record and the law, we find these issues to be without merit. The verdict and judgment are supported by material evidence, and the sentence of death is in no way arbitrary or disproportionate. We therefore affirm the convictions and the sentences.
Since the defendant challenges the sufficiency of the evidence for his convictions, we summarize the evidence presented at trial. On Saturday, January 15, 1983, around midnight, Frank Russell returned to his home in Chattanooga to find that his wife, Edith, had been murdered. Mrs. Russell’s body was lying on the floor of an apartment at the back of the home, which had been rented to a tenant. The tenant was away on vacation in Florida at the time of the murder.
Upon returning home from work, Mr. Russell first noticed that the porch lights were off and the front door was wide open, which, he stated, was unusual. There were pry marks on the door. The room in which Mrs. Russell was found was in disarray and there was evidence of a struggle. Both the house and the apartment had been burglarized and numerous items were miss *316 ing, including an RCA XL-100 television, two cable television converters, a quartz heater, a Polaroid 210 camera, a silver Cross pen and pencil set, a jeweler’s loop, a jewelry box, antique jewelry, a marble vase, and Mrs. Russell’s purse.
Mr. Russell testified that when he and his 62-year-old wife purchased the house seven years earlier, James Harbison and his son, Edward Jerome, the defendant, did some repair work on the house. Since that time, the two had worked on the house periodically, and the defendant performed some work at the house about a month prior to the murder.
Mrs. Russell left home about 1:30 p.m. to go to a neighborhood market, where witnesses spoke with her around 2:30 to 2:45 that afternoon. Mr. Russell left for work about 2:30 p.m. before she had returned home. No one saw or heard,from Mrs. Russell after she left the market. Her car was found parked in the driveway of their home with the key still in the ignition, and sacks of groceries still in the car.
The investigation of the crime led police to the residence of Janice Duckett, the defendant’s girlfriend and the sister of David Schreane. Schreane had been seen in the area of the Russell home on the day of the murder. A search of the Duckett residence yielded several of the items stolen from the Russell home, including the quartz heater, the Polaroid camera, the silver Cross pen and pencil set and a jeweler’s loop was found in a shaving kit belonging to the defendant. In an adjacent unoccupied apartment, police found a burned jewelry box in the fireplace, and a purse belonging to Mrs. Russell containing a small change purse. Two large paper sacks were also found containing antique glassware and brassware.
On February 21, 1983, David Schreane was taken into custody and questioned. As a result, his girlfriend’s home was searched by police and there they found the stolen RCA television set. Schreane then led the officers to the marble vase which was lying inside a hedgerow beside a street. Chemical testing of the vase revealed the presence of blood. Debris vacuumed from the carpet of defendant’s automobile revealed crystalline calcite fragments consistent with the marble vase.
Harbison was arrested on February 21, 1983, and brought to the police service center at 5:46 p.m. A taped statement was taken from him at 7:55 p.m. In the statement, he confessed to killing Mrs. Russell. He stated that after he had picked his girlfriend up and taken her home, he and Schreane went to check out the Russell residence. He stated that after determining that no one was there, he and Schreane backed their car up to the rear of the house and then went to the front door and opened it with a screwdriver. They then went inside and began accumulating items. He stated that they got an RCA XL-100 television set, a Cross pen and pencil set, a Polaroid 210 camera, a jewelry box, a .25 automatic pistol, a pocketbook, a clutch purse, a jeweler’s loop, a heater and a marble vase. They had been at the residence 15 to 20 minutes carrying items out to the car. He then told how he and Schre-ane had been surprised by Mrs. Russell as they were burglarizing her house and the tenant’s apartment. They did not hear her drive up in her car. He stated that when Mrs. Russell came in the door and reached for her pocketbook, he thought she was reaching for a gun and he grabbed her and they began “tusslin.” The defendant grabbed the marble vase and hit her with it, knocking her down. He stated that he struck her with the marble vase “at the most” two times. Schreane got Mrs. Russell’s pocketbook and no gun was found. During the scuffle with Mrs. Russell, the defendant’s right hand was scratched, leaving a visible scar.
In the room where Mrs. Russell’s body was found, there were blood spatterings on the wall and fireplace. A broken globe from an overhead chandelier was found next to her body. The medical examiner testified that in his opinion Mrs. Russell was struck at least three times with the vase in order to inflict the injuries he observed. The vase weighed a minimum of 25 pounds. All of the bones of the head, both front and back, were broken. The cause of Mrs. Russell’s death was massive multiple skull fractures with marked lacerations of the scalp and head, expelling brain tissue and literally crushing the victim’s face and disfiguring her beyond recognition.
Janice Duckett, the defendant’s girlfriend, testified for the defense that on January 15, 1983, at 2:30 p.m., the defendant and her brother, David Schreane, picked her up at the Precision Hair School and took her to her home, where Harbison remained the rest of the day. She claimed *317 that she had bought the heater at Sears, that the Cross pen and pencil set was a Christmas present, and that her brother owned the Polaroid camera.
The defendant testified that he did not break into the Russell home on January 15, 1983, and kill Mrs. Russell. He testified that he was at his girlfriend’s home the afternoon of January 15 and did not leave the house that evening. He further testified that he had only confessed because the police threatened to arrest his girlfriend and take away her children. He said that the police had told him what to say and that the tape of his confession, played to the jury, had been tampered with. He testified that he bought the jeweler’s loop, found in his shaving kit, at a pawn shop.
In rebuttal the State put on the two officers who had interrogated Harbison. The Chief of Detectives testified that at the time the defendant was questioned they did not threaten him with his girlfriend’s arrest in order to obtain the confession.
I
The first issue which we shall address is whether there is sufficient proof to sustain Harbison’s convictions of murder in the first degree, under common law and felony murder, burglary in the second degree, and grand larceny. The principles which govern our review of a conviction by jury are well settled. A jury verdict approved by the trial judge accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the State’s theory. State v. Hatchett, 560 S.W.2d 627, 630 (Tenn.1978); State v. Townsend, 525 S.W.2d 842, 843 (Tenn.1975). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 836 (Tenn.1978). A verdict against the defendant removes the presumption of innocence and raises a presumption of guilt on appeal, State v. Grace, 493 S.W.2d 474, 476 (Tenn.1973), which the defendant had the burden of overcoming. State v. Brown, 551 S.W.2d 329, 330 (Tenn.1977). After viewing the evidence in the light most favorable to the State, we must affirm the conviction if any rational trier of fact could have found defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Rule 13(e), T.R.A.P.
Based upon the evidence described heretofore, we are convinced a rational jury could find the defendant guilty beyond a reasonable doubt.
II
The defendant argues that the introduction of vivid and gruesome photographs was prejudicial and not sufficiently probative. Defendant avers the color photographs, showing the head of the body as it appeared at the scene, are inflammatory and prejudicial. The defendant further argues that the testimony of the medical examiner and the funeral director clearly and vividly described the nature of the blows received by the deceased, and that their verbal descriptions give a clear picture of the injuries sustained.
Generally, “the admissibility of photographs is a matter to be determined by the trial court in the exercise of its sound discretion.” Cagle v. State, 507 S.W.2d 121, 132 (Tenn.Crim.App.1973). The trial court’s ruling will not be overturned on appeal except upon a clear showing of abuse of that discretion. State v. Banks, 564 S.W.2d 947, 949 (Tenn.1978). “When photographs, gruesome in nature and likely to appeal to the emotions of the jury, are not probative of some contested factual issue they are not admissible. If probative, they are.” Hawkins v. State, 555 S.W.2d 876, 878 (Tenn.Crim.App.1977).
The State argues that the trial judge did not abuse his discretion in admitting the photographs of the victim’s head. Furthermore, the photographs, demonstrating repeated blows to the head of the victim, were relevant to show the elements of deliberation, premeditation, and malice in this first degree murder case.
The photographs are unpleasant and gruesome. However, they are highly relevant and probative to show that the defendant used much more force than his confession indicated he had used. The primary effect of seeing the photographs is not so much to inflame the viewer as to reveal to the viewer that, in light of the fact that the marble vase was quite heavy and the chandelier above the victim’s body had been broken, whoever wielded the vase did so deliberately and premeditatively, hitting the chandelier, and striking Mrs. Russell multiple times. No other testimony in the record conveys this picture of the events. The defendant confessed to striking the *318 victim not more than two times. The photographs depict a savage beating. Although they are admittedly gruesome, they give a better description of the nature and extent of the wounds than the testimony of the medical examiner and the funeral director.
We find that the probative value of the photographs is not outweighed by their prejudicial effect as required under State v. Banks, supra, at 949, and the trial court did not abuse his discretion in allowing their admission. Additionally, it does not affirmatively appear that the “admission of the photographs has affected the results of the trial.” State v. Banks, supra, at 953. See also, United States v. Brady, 595 F.2d 359, 361 (6th Cir.1979).
III
The defendant next argues that the trial court should have granted his motion for separate juries to consider the issue of guilt-innocence and sentencing. The defendant contends that he was denied the right to a fair trial by the systematic exclusion of prospective jurors who were against the death penalty, from the jury determining his guilt or innocence. The defendant relies on Grigsby v. Mabry, 758 F.2d 226 (8th Cir.1985), U.S. app. pending, which held that excluding such jurors from serving at the guilt hearing denies a defendant a jury composed of a representative cross-section of the community. We rejected this position in State v. McKay, 680 S.W.2d 447, 450, 453-455 (Tenn.1984), and more recently in State v. Zagorski, 701 S.W.2d 808 (Tenn.1985). See also Keeten v. Garrison, 742 F.2d 129 (4th Cir.1984); State v. Peacock, 313 N.C. 554, 330 S.E.2d 190, 196 (1985); Poyner v. Commonwealth, 229 Va. 401, 329 S.E.2d 815, 824-825 (1985); Hendrickson v. State, 285 Ark. 462, 688 S.W.2d 295, 297 (1985).
IV
The defendant contends that the death penalty is cruel and unusual punishment. He asserts that the death penalty is cruel and that it is imposed in an arbitrary and capricious manner. Similar arguments have been rejected by this Court. See State v. Austin, 618 S.W.2d 738, 741 (Tenn. 1981), cert. denied, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116; Houston v. State, 593 S.W.2d 267 (Tenn.1980). See also Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).
The defendant also contends that the imposition of the death penalty is arbitrary and capricious and violates the Eighth Amendment because death-qualified juries are conviction-prone. As noted in Section III, this Court has rejected claims that a death-qualified jury is conviction-prone.
V
The defendant next contends that the trial court erred in admitting his confession because it was not voluntarily given. The defendant avers that evidence was presented at the suppression hearing which showed that he gave his statement to the police because threats were being made to arrest and charge his girlfriend if he did not confess to the murder.
The two officers who interrogated the defendant both testified that they did not discuss arresting defendant’s girlfriend with the defendant or make any such threats. The tape itself reveals that the defendant asked the recorder be turned off so he could explain that his girlfriend was not involved. At the end of the taped statement, the defendant stated that he was not threatened by the officers.
The trial court ruled that defendant’s statement had been freely and voluntarily given, that there were no threats, no violence used against the defendant. The waivers “were executed knowingly, understandingly and voluntarily.” The trial court’s findings, which are essentially and clearly stated in the record,- are presumptively correct on appeal. Lloyd v. State, 223 Tenn. 1, 9, 440 S.W.2d 797, 800 (1969). These issues have been reliably determined, and once so determined, the presumption of correctness may only be overcome on appeal if the evidence in the record preponderates against the trial court’s findings. Mitchell v. State, 3 Tenn.Crim.App. 153, 160, 458 S.W.2d 630, 632 (1970). The trial judge heard and saw these witnesses, sitting as the finder of fact, and his determination has the weight of a jury verdict on appeal, accrediting the testimony of the prosecution witnesses and establishing the State’s theory of the case. Briggs v. State, 501 S.W.2d 831, 833 (Tenn.Crim.App.1973). Accordingly, such a ruling is binding on this Court if there is any material evidence to support it. State v. Pritchett, 621 S.W.2d 127, 133 (Tenn.1981); State v. *319 Chandler, 547 S.W.2d 918, 922-923 (Tenn.1977). In this case, there is ample evidence to support the trial court’s ruling.
VI
The defendant avers that he was denied the right to effective assistance of counsel in the preparation and trial of his ease. He alleges that his attorneys failed to investigate the case properly by their failure to locate additional witnesses who could assist in the presentation of an alibi defense. Defendant also alleges that his attorneys did not effectively try his case. He complains about voir dire and the failure of counsel to make a motion for judgment of acquittal at the close of the State’s proof, and at the close of all the proof.
Defense counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. A particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel’s judgments. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). Under this standard there was no ineffective assistance of counsel regarding the investigation of the unknown alibi witnesses.
The proof in this cause was clearly sufficient to sustain the conviction of the defendant. The failure of counsel to make a motion for judgment of acquittal at the close of the State’s proof and at the close of all the proof did not prejudice the defendant. See Strickland v. Washington, 104 S.Ct. at 2068. The trial court did not err in concluding that defendant’s attorneys rendered effective assistance of counsel under the principles set forth by this Court in Baxter v. Rose, 523 S.W.2d 930 (Tenn.1974).
VII
The defendant complains of the following charge:
Self-defense is normally a valid defense in a homicide case. However, the law further provides that when a person, who is engaged in committing a felony, kills another, he may not rely on self-defense by attempting to show that his intent was not to kill but to defend his own life. The law holds that when the felon is the instigator and author and brings about the whole chain reaction, he thus cannot defend on the ground of self-defense.
The defendant contends the trial court erred in giving this charge, because it forced upon him a theory he did not wish to pursue, and created confusion. The State argues to the contrary, that the trial court’s instruction did not force the defense of self-defense upon the defendant, because the instruction states the inapplicability of the right of self-defense in this case.
Immediately before the above quoted charge was given, the court instructed the jury on “a confession — a statement by the defendant.” Immediately after the self-defense charge was given, the court instructed the jury on “alibi — the defendant’s theory.” We find the charge as given created no confusion in the minds of the jury.
In defendant’s confession he stated: that he was surprised when Mrs. Russell appeared at the door, that when she reached for her pocketbook he thought she was reaching for a gun and he grabbed her and they began “tusslin’ ”, and that he grabbed a marble vase and hit her with it knocking her down. The defendant’s theory was that the statement he gave was coerced and untrue, and that he was somewhere else when the killing of Mrs. Russell occurred. At the State’s request the charge was given to avoid any speculation by the jury in light of the confession, which did suggest a theory of self-defense.
It is the duty of a trial judge to give a complete charge of the law applicable to the facts of a case. State v. Thompson, 519 S.W.2d 789, 792 (Tenn.1975). This the trial court did and we find no error in the charge.
VIII
The defendant concludes by asserting that the imposition of the death penalty in this case is too severe. He asserts that at the sentencing phase, the State relied on a single aggravating circumstance — that the murder was committed while the defendant was engaged in committing a burglary. See T.C.A. § 39-2-203(i)(7). The defendant argues that weighing against this single aggravating circumstance, was the fact that the defendant had no significant prior history of criminal activity. T.C.A. § 39-2-2030X1)-
*320 In a case in which the death penalty is sought, if the jury unanimously determines that at least one statutory aggravating circumstance has been proven by the State beyond a reasonable doubt, and said circumstance is not outweighed by any mitigating circumstances, then the sentence shall be death. See T.C.A. § 39-2-203(g).
The proof at the guilt phase clearly established beyond a reasonable doubt that the murder was committed during the perpetration of a burglary. Thus a statutory aggravating circumstance was proved beyond a reasonable doubt. The defense argued several mitigating circumstances to the jury: defendant’s lack of significant history of prior criminal activity; the death was instantaneous; the defendant brought no weapon to the scene of the crime; the defendant thought Mrs. Russell was going for a gun.
Whether the mitigating circumstances outweighed the statutory aggravating circumstance was solely within the province of the jury. The jury unanimously found “the murder was committed while the defendant was engaged in committing burglary.” The jury also found “that there are no mitigating circumstances sufficiently substantial to outweigh the statutory aggravating circumstance.” There was sufficient evidence upon which the jury could make that determination. It cannot be said the imposition of the death penalty in this case is unwarranted.
We have reviewed the sentence of death in accord with the mandate of T.C.A. § 39-2-205(c)(4) and are satisfied that the evidence warrants the imposition of the death penalty.
The sentence of death will be carried out on the 5th day of May, 1986, unless stayed by appropriate authority.
Costs are adjudged against the defendant.
FONES, HARBISON and COOPER, JJ., concur.
BROCK, C.J., concurs in part and dissents in part. See separate dissenting opinion.