# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

## SEPTEMBER, 1997 SESSION

**FILED**

February 20, 1998

**Cecil W. Crowson**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | No. 01C01-9611-CC-00464 |
| | ) | |
| Appellee, | ) | |
| | ) | Cheatham County |
| vs. | ) | |
| | ) | Honorable Robert E. Burch, Judge |
| **CHRISTOPHER DALE GIBBS,** | ) | |
| | ) | |
| | ) | (Vehicular Homicide, Leaving the Scene) |
| Appellant. | ) | |

FOR THE APPELLANT:

LIONEL BARRETT
222 Second Ave. N.
Nashville, TN 37201

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

LISA A. NAYLOR
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

DAN MITCHUM ALSOBROOKS
District Attorney General
Court Square, P.O. Box 580
Charlotte, TN 37036-0580

JAMES W. KIRBY
Assistant District Attorney General
105 Sycamore St.
Ashland City, TN 37015-1806

OPINION FILED: _____

**AFFIRMED**

CURWOOD WITT
JUDGE

**OPINION**

The defendant, Christopher Dale Gibbs, was convicted in a jury trial in the Cheatham County Circuit Court of vehicular homicide by reckless driving, a Class C felony. The defendant pleaded guilty to leaving the scene of an accident, a Class E felony. As a Range I, standard offender, he received a six-year sentence for vehicular homicide and a consecutive two-year sentence for leaving the scene. In this direct appeal, the defendant challenges the sufficiency of the evidence and contends that his sentences are excessive and that the trial judge erred in imposing consecutive sentences.

We affirm the judgment of the trial court.

On July 5, 1995 at approximately 7:25 p.m., the defendant was driving in his 1970 red Dodge Power Wagon along the River Road near Ashland City. As he crested a hill, eyewitnesses saw the truck swerve onto the gravel shoulder and sideswipe a road sign. The truck then veered farther off the road into the yard of the eighty-seven year old victim, Frank Patterson Tant. Tant was pulling weeds about six feet off the roadway when the truck struck him. The truck then bounced over a culvert and eventually regained the road approximately sixty-five feet from the sign. Two other motorists watched as the truck picked up speed. The witnesses stopped about fifty yards below the accident and ran back to where the victim's body was lying in his daughter's yard some twenty-three feet from the point of impact.[1] Finding no signs of life, they covered the body with a pink towel. When the defendant attempted to turn off the River Road onto a side road about 3/4 mile from the scene of the accident, he drove into a tree and then hit a fence post. At that point, the defendant fled on foot. Two days later the defendant turned himself in to the Cheatham County Sheriff's Office.

---

[1] Both witnesses testified that they thought someone had been thrown out of the truck.

2

Sgt. Robert Brown, an accident reconstructionist, found pieces of shattered glass, fragments of red paint, and pieces of red plastic at the scene. The defendant's red truck had a damaged headlight and a broken plastic bug deflector. The truck's undercarriage was damaged. Inside the truck were a Budweiser carton, some cassette tapes, and radio speakers. Sgt. Brown was unable to estimate the speed at which the truck was moving because it traveled over three different surfaces -- pavement, gravel, and grass. However, eyewitnesses estimated that his speed was between 50 and 55 miles per hour. The posted speed limit along that stretch of road is 50 miles per hour. An FBI laboratory report indicated that the paint fragments found at the scene were consistent with the paint on the defendant's truck.

Dr. Charles Harlan, who performed the autopsy, testified that the victim died from multiple injuries including fractured ribs, multiple punctures to the lungs, and fractured and dislocated vertebrae. The victim's liver was torn into several pieces and his aorta was severed. The doctor opined that the victim would have died within one or two minutes of the impact.

Other state witnesses testified that the defendant had spent the day boating and swimming. According to their testimony, the defendant drank only part of one beer during the afternoon. At about four o'clock, the defendant and three friends ate dinner. At that time, the defendant ordered two margaritas; however, he did not finish the second drink. After leaving the restaurant alone, the defendant stopped briefly at the home of Kenneth Woods. Woods testified that when he noted that the defendant's eyes were red and that the defendant appeared tired, he invited him to stay and eat something, but the defendant declined the invitation.[2]

_____

[2]

The state impeached Woods's testimony with a video tape of an interview Woods gave to a television news reporter. In the interview, Woods expressed the opinion that the defendant had been under the influence of some intoxicant. Woods made a similar statement to Sgt. Brown and to the grand jury. At trial, however, he insisted that the defendant did not appear drunk other than his red eyes. The record indicates that Woods was later indicted for perjury.

According to Renee Batey, who saw the defendant several hours after the accident, the defendant told her that he was looking down to adjust a radio sitting on the console beside him when he veered off the road. She said that the truck was old and that she knew that the steering had a lot of slack in it. Although the defendant did not testify at trial, he gave a brief statement to the sheriff. In his statement, he admitted that he drove the truck that struck the victim. He said that his head was hurting, and that his steering had some slack in it. He hit the victim who "just popped up in front of him." He did not mention the radio.[3] The defense rested without putting on any proof.

The trial court instructed the jury on vehicular homicide while driving under the influence, a class B felony, and vehicular homicide by reckless operation of a vehicle, a class C felony. After deliberating for several hours, the jury found the defendant guilty of vehicular homicide by reckless operation of a vehicle.

The defendant now contends that the state has failed to prove the element of recklessness beyond a reasonable doubt. He argues that the evidence proves nothing more than momentary negligence because, according to the eye witnesses, he was not speeding far in excess of the posted speed limit or driving erratically prior to the accident. We disagree.

Since a jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, a convicted defendant has the burden of demonstrating on appeal that the evidence is insufficient. State v, Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). In determining that sufficiency, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate

---

[3] The written statement was not admitted into evidence at trial. The chief deputy read it aloud for the jury.

4

inferences which may be drawn therefrom. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). It is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offenses beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); Tenn. R. App. P. 13(e).

A criminal offense may be established exclusively by circumstantial evidence. Duchac v. State, 505 S.W.2d 237 (Tenn. 1973); State v. Jones, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995); State v. Lequire, 634 S.W.2d 608 (Tenn. Crim. App. 1987). However, before an accused may be convicted of a criminal offense based upon circumstantial evidence alone, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant." State v. Crawford, 225 Tenn. 478, 470 S.W.2d 610 (1971); State v. Jones, 901 S.W.2d at 396. Inferences to be drawn from circumstantial evidence are within the province of the trier of fact. This court may not substitute its inferences for those drawn by the jury from the evidence. Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956), cert. denied 325 U.S. 845, 77 S.Ct. 39 (1956); Farmer v. State, 574 S.W. 2d 49, 51 (Tenn. Crim. App. 1978).

To convict an accused of vehicular homicide due to recklessness, the state must prove beyond a reasonable doubt that (a) the accused killed the victim while operating a motor vehicle, (b) the killing was done recklessly, and (c) the killing was "the proximate result of conduct creating a substantial risk of death or serious bodily injury. Tenn. Code Ann. § 39-13-213(1)(a)(1997). A person acts recklessly when he is "aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." Tenn. Code Ann. § 39-11-302(c)(1997). The risk must be such "that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's viewpoint." Id.

While the case presented is a close case, a rational juror could

5

conclude beyond a reasonable doubt that the defendant was driving recklessly when he struck Mr. Tant. We agree with the defendant that exceeding the speed limit by five miles per hour does not, by itself, constitute a gross deviation from the standard care that an ordinary person would exercise. See State v. Timothy Gose, No. 03C01-9406-CR-00244, slip op. at 3 (Tenn. Crim. App., Knoxville, Jan. 29, 1996). In Gose, the defendant was driving roughly ten miles above the speed limit when he glanced down at the floorboard because he thought his passenger had dropped a cigarette. Slip op. at 1-2. The vehicle went off the roadway and struck a mailbox. Id. at 2. The driver over-corrected, the brakes locked, the vehicle crossed the center line and struck a dump truck. Id. This court affirmed a trial court's judgment of acquittal finding that the evidence was legally insufficient to prove that the defendant acted recklessly. Id. at 3.

However, unlike Gose, other facts prove that this defendant's conduct was reckless. When the defendant arrived at Woods's residence just a few moments before the accident, Mr. Woods realized that something was wrong with the defendant and urged him to stay. The defendant was also aware of a problem because he spoke of the headache which had plagued him all afternoon. He admitted that his truck's steering was faulty. He knew that he had consumed some alcoholic beverages which might affect his reaction time and his judgment. The record indicates he chose to exceed the speed limit by a small margin. He lost control of his truck as he rounded a curve at the crest of a hill. The truck hit a road sign and then veered off at least six feet into Mr. Tant's yard where it struck and killed Mr. Tant. The truck traveled another 30 or 40 feet before it returned to the roadway.

Also, under Tennessee law, the defendant's flight from the scene reflects culpability. Our courts view an attempt to avoid apprehension or prosecution as relevant because it tends to "show guilt, consciousness of guilt, or knowledge," Buckingham v. State, 540 S.W.2d 660, 665 (Tenn. Crim. App. 1976);

6

Mitchell v. State, 3 Tenn. Crim. App. 153, 161, 458 S.W.2d 630, 633 (1970). Such evidence may be considered by the trier of fact "as one of a series of circumstances from which guilt may be inferred." State v. Braggs, 604 S.W.2d 883, 886 (Tenn. Crim. App. 1980); see State v. Harris, 839 S.W.2d 54, 74 (Tenn. 1992); State v. Zagorski, 701 S.W.2d 808, 813 (Tenn. 1985); Hill v. State, 3 Tenn. Crim. App. 331, 332, 461 S.W.2d 50, 52 (1970); Rogers v. State, 2 Tenn. Crim. App. 491, 501, 455 S.W.2d 182, 186 (1970). When the state presents sufficient evidence to establish flight, the state is entitled to have an instruction included in the charge setting forth the law of flight. See State v. Howell, 868 S.W.2d 238, 254-55 (Tenn. 1993). The jury received such an instruction in this case.

From the evidence presented at trial, a rational juror could reasonably conclude that the defendant fled to avoid arrest for his criminal actions. See State v. Braggs, 604 S.W.2d 883, 886 (Tenn. Crim. App. 1980), and Rogers v. State, 2 Tenn. Crim. App. 491, 501, 455 S.W.2d 182, 186 (1970). Instead of stopping, the defendant increased his speed and drove off knowing that he had struck and seriously injured someone. Then, after colliding with a tree and a fence post, he abandoned his vehicle and stayed hidden for two days before presenting himself to the authorities. During this time any evidence of his physical condition at the time of the accident would have dissipated. From these actions, the jury could have concluded that the defendant was well aware that the victim's fatal injuries were not the result of mere accident but were caused by the defendant's criminal recklessness.

Although we find this to be a close case, we find that the evidence in the present case is legally sufficient for a rational juror to conclude that this defendant consciously disregarded a substantial and unjustifiable risk and that this disregard constituted a gross deviation from the standard of care that an ordinary person would exercise under these circumstances. The evidence in the record is sufficient to find that the defendant was guilty of vehicular homicide by reckless

7

driving beyond a reasonable doubt.

Next the defendant contends that his aggregate sentence of eight years is excessive. Vehicular homicide by reckless driving is a class C felony, and as a Range I offender the defendant was potentially subject to a sentence of not less than three nor more than six years incarceration. Tenn. Code Ann. § 40-35-112(a)(3)(1997). For leaving the scene of an accident, a class E felony, the trial court could have sentenced the defendant to not less than one but not more than two years. Tenn. Code Ann. § 40-35-112)(a)(5) (1997). In this case, the trial court determined that the maximum sentence was appropriate for both convictions.

When an accused challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (1990). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The defendant has the burden of demonstrating that the sentence is improper. Id. In the event the record fails to demonstrate the appropriate consideration by the trial court, appellate review of the sentence is purely de novo. Id. If our review reflects that the trial court properly considered all relevant factors and the record adequately supports its findings of fact, this court must affirm the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In this instance, we find that the trial court considered the sentencing principles and all relevant facts and circumstances. Thus, we review the trial court's determinations de novo with a presumption of correctness to ascertain whether the trial court erred in ordering the defendant to serve the maximum number of years in both convictions.

The trial court found that the defendant has a long history of criminal conduct and that he had previously demonstrated unwillingness to comply with conditions of a sentence involving release into the community. See Tenn. Code Ann. § 40-35-114(1) and (8)(1997). The trial judge attached great weight to these two factors. Both are supported by the record, and we agree that both are highly significant. The defendant's record contains eighteen misdemeanor offenses, mostly for driving related offenses including two previous convictions for DUI. Two convictions were for drug-related crimes. The sheer number of offenses for a man of twenty-six years indicates that, even though he had no prior felony convictions, this defendant has little respect for the law or for the safety of others. The pre-sentence report shows that the defendant had been placed on probation several times in the past and had committed other offenses while he was on probation. The trial court found no mitigating factors, and our review of the record has disclosed none. In this instance, the trial court properly considered all relevant factors and the record adequately supports its findings of fact. Therefore, this court must affirm the sentences imposed by the trial court.

Finally, the defendant contends that the trial court should not have ordered the consecutive service of his sentences. Consecutive sentencing may be imposed in the discretion of the trial court upon a determination that one or more of the criteria listed in Tennessee Code Annotated section 40-35-115(b) exist. The trial court found that the defendant is a dangerous offender whose behavior indicates little or no regard for human life, that he had no hesitation about committing a crime in which the risk to human life is high, Tenn. Code Ann. § 40-35-115(b)(4), and that the offense was committed while the defendant was on probation. Tenn. Code Ann. § 40-35-115(b)(6). The trial court properly found that extended sentences are necessary in this case to protect the public. As the trial judge noted, although this defendant is not a "John Dillinger," he is a danger to the community when he gets behind the wheel. The defendant's reckless driving cut short the life an elderly man who was doing nothing more offensive than pulling

9

weeds in his yard.

We find, as did the trial court, that (1) an extended sentence in this case is necessary to protect the public against further criminal conduct by the defendant, and (2) that the length of the aggregate sentences reasonably relates to the seriousness of the offense. State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995). The defendant has not met his burden of showing that the trial court erred in ordering his sentences to be served consecutively.

Therefore, we affirm the defendant's conviction for vehicular homicide by reckless driving and the sentences imposed by the trial court.

_____
CURWOOD WITT, Judge

CONCUR:

_____
GARY R. WADE, Judge

_____
THOMAS T. WOODALL, Judge